568

(143 P.3d 58)
No. 94,523

STATE OF KANSAS, *Appellee,* v. LARRY G. WAHWEOTTEN, *Appellant.*

Opinion filed September 15, 2006.

*Carl Folsom, III,* of Kansas Appellate Defender Office, for appellant.

*Amy M. Memmer,* assistant district attorney, *Robert D. Hecht,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before RULON, C.J., GREEN and GREENE, JJ.

GREEN, J.: Larry Wahweotten appeals his jury trial convictions of driving under the influence of alcohol (DUI) as a third offense in violation of K.S.A. 2005 Supp. 8-1567(a)(3), refusing to submit to a preliminary breath test in violation of K.S.A. 2005 Supp. 8-1012, and failing to provide proof of automobile liability insurance in violation of K.S.A. 40-3104. Wahweotten raises the following five

arguments on appeal: (1) that the trial court improperly allowed the admission of evidence of his preliminary breath test refusal; (2) that he was improperly forced to give up his constitutional right against self-incrimination in favor of his constitutional right against a warrantless search; (3) that he was denied a fair trial and his right to due process by the prosecutor's statements during closing arguments; (4) that the evidence was insufficient to convict him of DUI; and (5) that cumulative error deprived him of a fair trial. Finding no reversible error, we affirm.

During the early morning hours of June 1, 2003, officer Jason Harwood was working DUI enforcement in Topeka when he saw a truck that appeared to be speeding in a 35-miles-per-hour zone along Gage Boulevard. Harwood used his radar gun to measure the car's speed at 45 miles per hour. Harwood stopped the truck for speeding and asked Wahweotten for his driving information.

During the stop, Wahweotten could not produce a valid insurance card. Moreover, Wahweotten gave Harwood a Kansas identification card but did not present a driver's license. Wahweotten testified that he did not have a driver's license at the time and was unsure of whether his license had been suspended. When Wahweotten presented his Kansas identification card, Harwood smelled a strong odor of alcohol. Harwood then asked Wahweotten if he had been drinking, and Wahweotten responded that he had "had a couple." Harwood noticed that Wahweotten's eyes were bloodshot and "had a glazed look to them" and that his speech was slightly slurred.

·During his testimony at trial, Wahweotten admitted that he had been drinking at a bar just before he was stopped by Harwood. Nevertheless, Wahweotten testified that he had only one 12-ounce beer and part of another beer before he left the bar. Earlier in the day, Wahweotten had helped his friend Russell Root on his farm. According to Wahweotten, he and Root did not arrive at the bar until approximately 11 or 11:30 p.m.

Root testified that he and Wahweotten were drinking at approximately the same rate and that he had about two or three beers before Wahweotten left. Wahweotten and Root were at the bar for approximately 45 minutes to an hour when Wahweotten's cousin

called him for a ride to her friend's house. Wahweotten then left the bar and was stopped several blocks from the bar by Officer Harwood. When approached by Harwood, Wahweotten admitted that he was speeding.

Wahweotten agreed to take field sobriety tests. Harwood testified that during the walk-and-turn test, Wahweotten showed several signs of impairment including failing to touch heel to toe, stepping off the line on the fifth and sixth steps, and failing to perform the pivot turn correctly. Moreover, Harwood testified that during the one-leg stand test, Wahweotten showed two out of four signs of impairment, which included swaying and raising his arms throughout the test. On the other hand, Wahweotten indicated that he had done well during the field sobriety tests except for being a little uncomfortable while raising his foot in the air during the one-leg stand test.

After Wahweotten showed signs of impairment on the field sobriety tests, Harwood asked Wahweotten to take a preliminary breath test. Harwood testified that without giving any reason, Wahweotten declined to take the preliminary breath test. Wahweotten testified that he did not take the preliminary breath test because he had already gone through the field sobriety tests and did not understand why the preliminary breath test was necessary.

Harwood placed Wahweotten under arrest. Harwood proceeded to read Wahweotten the implied consent advisory and asked him to take a breath test on the Intoxilyzer 5000. Wahweotten agreed to take the Intoxilyzer 5000 breath test. Because Harwood was not certified to administer the Intoxilyzer 5000, he found another officer to administer the test. Nevertheless, as the officer was about to administer the Intoxilyzer 5000 test, Wahweotten refused to take the test. According to Harwood, Wahweotten indicated that he would be better off if he did not take the test. Nevertheless, Wahweotten testified that he did not take the Intoxilyzer 5000 breath test because he had refused to take the preliminary breath test. He further testified that because he had refused to take the preliminary breath test, he knew that his license would be suspended. Consequently, he decided not to take the Intoxilyzer 5000 breath test.

Wahweotten was charged with driving under the influence of alcohol as a third offense in violation of K.S.A. 2005 Supp. 8-1567(f), with refusing to submit to a preliminary breath test in violation of K.S.A. 2005 Supp. 8-1012, and with no liability insurance in violation of K.S.A. 40-3104. At a jury trial, Wahweotten was found guilty of the charged offenses. Wahweotten was sentenced to 12 months in jail, which sentence would be suspended after he had served 90 days.

## I. Was Wahweotten's preliminary breath test refusal admissible to prove DUI?

First, Wahweotten argues that his refusal to submit to a preliminary breath test was inadmissible for the purpose of proving DUI. Generally, an appellate court's standard of review regarding the admission of evidence, subject to exclusionary rules, is abuse of discretion. *State v. Holmes*, 278 Kan. 603, 623, 102 P.3d 406 (2004). As the State points out, however, Wahweotten never objected to the admission of such evidence at trial. A timely and specific objection to the admission of evidence at trial is necessary to preserve the issue for appeal. *State v. Kunellis*, 276 Kan. 461, 477, 78 P.3d 776 (2003). This rule is based upon K.S.A. 60-404, which states that a verdict shall not be set aside "by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

Nevertheless, an appellate court can consider such an issue " 'in exceptional circumstances . . . where consideration of the . . . issue is necessary to serve the interests of justice or to prevent a denial of fundamental rights.' [Citation omitted.]" *State v. DuMars*, 33 Kan. App. 2d 735, 743, 108 P.3d 448, *rev. denied* 280 Kan. 986 (2005). Moreover, our Supreme Court has recognized three exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) when the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) when consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and

(3) when the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground for its decision. *State v. Schroeder*, 279 Kan. 104, 116, 105 P.3d 1237 (2005).

Although Wahweotten has failed to allege that the present issue fits within any of the above-mentioned circumstances, which would warrant this court addressing his argument, we, however, will address Wahweotten's argument.

Wahweotten contends that because K.S.A. 2005 Supp. 8-1012 fails to provide for the admission of preliminary breath test results into evidence, his refusal was inadmissible at trial to prove DUI. Wahweotten's argument requires interpretation of various statutes relating to the admission of breath test results into evidence. Interpretation of a statute presents a question of law over which an appellate court's review is unlimited. As an appellate court, we are not bound by the trial court's interpretation of a statute. See *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

K.S.A. 2005 Supp. 8-1012 pertains to an officer's reasonable grounds to request a preliminary breath test and the notice that is required when such a request is made. In addition, K.S.A. 2005 Supp. 8-1012 states that the refusal to take and complete a preliminary breath test constitutes a traffic infraction and sets forth the limited admissibility of preliminary breath test results as follows:

"Refusal to take and complete the [preliminary breath] test as requested is a traffic infraction. If the person submits to the test, the results shall be used for the purpose of assisting law enforcement officers in determining whether an arrest should be made and whether to request the tests authorized by K.S.A. 8-1001 and amendments thereto. A law enforcement officer may arrest a person based in whole or in part upon the results of a preliminary screening test. *Such results shall not be admissible in any civil or criminal action except to aid the court or hearing officer in determining a challenge to the validity of the arrest or the validity of the request to submit to a test pursuant to K.S.A. 8-1001 and amendments thereto.*" (Emphasis added.)

K.S.A. 2005 Supp. 8-1012 does not speak directly to the admissibility of a breath test *refusal*. Nevertheless, it is clear that the legislature intended for evidence of a defendant's preliminary breath test refusal to be admissible in prosecutions for a traffic infraction under K.S.A. 2005 Supp. 8-1012. K.S.A. 2005 Supp. 8-

1012 provides for a traffic infraction when an individual has refused to submit to a preliminary breath test. As the State points out, the only evidence of that traffic infraction is the evidence of an individual's refusal to submit to a preliminary breath test. To hold that evidence of a preliminary breath test refusal is inadmissible under all circumstances would render the portion of K.S.A. 2005 Supp. 8-1012 making a preliminary breath test refusal a traffic infraction meaningless. "As a general rule, statutes are construed to avoid unreasonable results. There is a presumption that the legislature does not intend to enact useless or meaningless legislation. [Citation omitted.]" *In re M.R.*, 272 Kan. 1335, 1342, 38 P.3d 694 (2002).

Here, Wahweotten was prosecuted for DUI, failure to provide proof of automobile liability insurance, and refusal to submit to a preliminary breath test. Evidence of Wahweotten's preliminary breath test refusal was admissible to prove refusal to submit to a preliminary breath test under K.S.A. 2005 Supp. 8-1012.

Nevertheless, Wahweotten contends that even if the preliminary breath test refusal was admissible at trial to prove refusal to submit to a preliminary breath test, it was not admissible to prove his DUI charge. Wahweotten maintains that the trial court should have given the jury a limiting instruction that such evidence should be considered for only the charge of refusal to submit to a preliminary breath test. On the other hand, the State contends that evidence of Wahweotten's preliminary breath test refusal was admissible to prove not only the traffic infraction of refusal to submit to a preliminary breath test, but also the charge of DUI. The State maintains that nothing in K.S.A. 2005 Supp. 8-1012 or any other law in Kansas prohibits the admission of evidence of a defendant's refusal to submit to a breath test. The State asserts that the preliminary breath test refusal was relevant to the DUI charge and that there is no statutory provision prohibiting the admission of evidence of a preliminary breath test refusal.

The parties fail to cite any Kansas case which has considered the issue of whether a preliminary breath test refusal is admissible to prove DUI. The State cites *State v. Sewell*, No. 90,713, unpublished opinion filed August 6, 2004, where the defendant argued

that there was insufficient evidence to support his DUI conviction. In determining that there was sufficient evidence, this court looked at the fact that the defendant had refused to submit to any sobriety tests, including the Intoxilyzer breath test. Nevertheless, this court in *Sewell* never addressed the particular issue of whether a preliminary breath test refusal is admissible evidence in a DUI prosecution.

As the State points out, the general rule concerning the admission of evidence is that "except as otherwise provided by statute, all relevant evidence is admissible. K.S.A. 60-407(f)." *State v. Horn*, 278 Kan. 24, 37, 91 P.3d 517 (2004). The legislature, however, has enacted a statutory scheme that relates to breath testing for alcohol and drugs and the admissibility of evidence concerning such testing. When construing statutes and determining legislative intent, this court must bear in mind that the fundamental rule of statutory construction is that the legislature's intent controls if that intent can be ascertained. There is a presumption that the legislature expressed its intent through the language of the statutory scheme enacted. When a statute is plain and unambiguous, a court must give effect to the legislature's intention as expressed rather than determine what the law should or should not be. *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 88, 106 P.3d 492 (2005). Moreover, " 'several provisions of an act in pari materia must be construed together with a view of reconciling and bringing them into workable harmony if possible.' [Citation omitted.]" *State v. Huff*, 277 Kan. 195, 203, 83 P.3d 206 (2004).

As discussed above, K.S.A. 2005 Supp. 8-1012 does not speak directly to the admissibility of a preliminary breath test *refusal* in a DUI prosecution. The statute, however, makes clear that such refusal constitutes only a traffic infraction. Moreover, the plain language of the statute evidences the legislature's intent to limit the admissibility of the results of preliminary breath testing. Under K.S.A. 2005 Supp. 8-1012, preliminary breath test results are to be used in a civil or criminal action only to assist a court in determining a challenge to the validity of an arrest or the validity of a request to submit to alcohol testing under K.S.A. 2005 Supp. 8-1001. Thus, preliminary breath test results are relevant when looking at the

initial arrest or the request to submit to further testing under K.S.A. 2005 Supp. 8-1001. The preliminary breath test results cannot be used to prove that a defendant was guilty of DUI beyond a reasonable doubt.

In dealing with an evidentiary breath test under K.S.A. 2005 Supp. 8-1001, the legislature has specifically provided for the admission of a breath test refusal. K.S.A. 2005 Supp. 8-1001(i) states: "The person's refusal shall be admissible in evidence against the person at any trial on a charge arising out of the alleged operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both." Our Supreme Court has stated that the tests under K.S.A. 2005 Supp. 8-1012 and K.S.A. 2005 Supp. 8-1001 "are completely separate in purpose, usage, and legal effect." *State v. Gray*, 270 Kan. 793, 798, 18 P.3d 962 (2001). Moreover, the legislature has made clear that a "test refusal" does not include the refusal of a preliminary breath test. K.S.A. 2005 Supp. 8-1013(i) states: " 'Test refusal' or 'refuses a test' refers to a person's failure to submit to or complete any test, other than a preliminary screening test, in accordance with this act . . . ."

Moreover, the legislature has provided for the admissibility of a partial concentration evidentiary breath test. Under K.S.A. 2005 Supp. 8-1013(f)(2), the legislature has stated that "readings obtained from a partial alcohol concentration test on a breath testing machine" are "other competent evidence." "Other competent evidence" is admissible in criminal proceedings under K.S.A. 8-1006(a). See *State v. Maze*, 16 Kan. App. 2d 527, 533-34, 825 P.2d 1169 (1992) (determining that a deficient sample breath test result is admissible as other competent evidence under K.S.A. 8-1013[f][2] [1991 Furse] and K.S.A. 8-1006[a] [1991 Furse]).

K.S.A. 2005 Supp. 8-1012 contains no provision which would allow for the admission of a preliminary breath test refusal or deficient results into evidence. Clearly, the legislature's intent under K.S.A. 2005 Supp. 8-1012 was to limit the use of evidence of a preliminary breath test in a DUI proceeding to the circumstances that are specifically set forth in the statute. There is no indication that the legislature intended for a preliminary breath test refusal to be admissible to prove that a defendant is guilty of DUI. If the

legislature had intended for evidence of a preliminary breath test refusal to be admissible to prove DUI, it could have enacted a provision similar to K.S.A. 2005 Supp. 8-1001(i). The legislature's failure to do so, coupled with its clear intent to limit evidence of a preliminary breath test under K.S.A. 2005 Supp. 8-1012 in a DUI prosecution, makes it apparent that the legislature did not intend for a preliminary breath test refusal to be admissible to prove DUI.

In this case, the trial court should have instructed the jury to consider evidence of Wahweotten's preliminary breath test refusal only for the charge of refusal to submit to a preliminary breath test under K.S.A. 2005 Supp. 8-1012. Nevertheless, Wahweotten acknowledges that he failed to object to the lack of a limiting instruction. " 'It is well established that [an appellate court] reviews a trial court's failure to give an instruction by a clearly erroneous standard where the party *neither requested the instruction nor objected to its omission*.' [Citation omitted.]" *State v. Pabst*, 273 Kan. 658, 660, 44 P.3d 1230, *cert. denied* 537 U.S. 959 (2002). " 'Instructions are clearly erroneous only if the reviewing court is firmly convinced there is a real possibility that the jury would have rendered a different verdict if the error had not occurred.' [Citation omitted.]" *State v. Shirley*, 277 Kan. 659, 666, 89 P.3d 649 (2004).

Here, even if the trial court had given a limiting instruction, there was no real possibility that the jury would have acquitted Wahweotten of DUI. The evidence showed that Wahweotten left a bar and was speeding when he was pulled over by Harwood. Wahweotten smelled of alcohol, his eyes were bloodshot and glazed, and his speech was slightly slurred. He admitted to drinking. During two field sobriety tests, Wahweotten showed several signs of impairment. After being taken to the police station, he ultimately refused breath testing on the Intoxilyzer 5000. The evidence in this case was overwhelming that Wahweotten was guilty of DUI under K.S.A. 2005 Supp. 8-1567(a)(3).

*Doctrine of Unconstitutional Conditions*

Next, Wahweotten challenges the introduction into evidence of his refusal to submit to preliminary and evidentiary breath tests on constitutional grounds. Wahweotten maintains that he was forced

to choose between waiving his Fifth Amendment right against self-incrimination or waiving his Fourth Amendment right to be free of searches of his person. When the appellate court reviews a constitutional challenge to the admission of evidence, it applies the federal constitutional rule, under which an error is not harmless unless the appellate court is willing to declare beyond a reasonable doubt the error had little, if any, likelihood of having changed the result of the trial. *Holmes*, 278 Kan. at 625.

Nevertheless, Wahweotten concedes that he failed to object to evidence of the breath test refusals at trial. As discussed above, a timely and specific objection must be made to the introduction of evidence at trial in order to preserve the issue for appeal. *Kunellis*, 276 Kan. at 477; K.S.A. 60-404. Furthermore, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Williams*, 275 Kan. 284, 288, 64 P.3d 353 (2003).

Nevertheless, as set forth above, our Supreme Court has recognized three exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) when the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) when consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) when the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground for its decision. *Schroeder*, 279 Kan. at 116. Wahweotten contends that this court should address his argument because the present issue falls within the first two exceptions outlined above.

Wahweotten maintains that his refusal to submit to the preliminary breath test and the later evidentiary breath test forced him to choose between his Fourth and Fifth Amendment rights under the United States Constitution. Wahweotten contends that such a decision violates the doctrine of unconstitutional conditions. In other words, he would have to give up a constitutional right to obtain a constitutional right. The doctrine of unconstitutional conditions has been described as follows:

" 'The doctrine of unconstitutional conditions holds that government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold that benefit altogether. It reflects the triumph of the view that government may not do indirectly what it may not do directly over the view that the greater power to deny a benefit includes the lesser power to impose a condition on its receipt.' Sullivan, *Unconstitutional Conditions*, 102 Harv. L. Rev. 1413, 1415 (1989)." *Mueller v. State*, 28 Kan. App. 2d 760, 766, 24 P.3d 149, *rev. denied* 271 Kan. 1037 (2001), *cert. denied* 535 U.S. 997 (2002).

This doctrine was illustrated in *Simmons v. United States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968). There, a defendant testified at a suppression hearing that he was the owner of the items that he sought to suppress. His testimony at the suppression hearing was later used against him at trial. The United States Supreme Court determined that the testimony could not be used against the defendant at trial. The Court stated that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." 390 U.S. at 394. The Court reasoned that the defendant had to either give up what he thought, through the advice of counsel, was a valid Fourth Amendment claim or waive his Fifth Amendment privilege against self-incrimination. The Court found it to be "intolerable that one constitutional right should have to be surrendered in order to assert another." 390 U.S. at 394.

### Fifth Amendment Right Against Self-Incrimination

Here, Wahweotten contends that he was forced to forgo his Fifth Amendment right against self-incrimination when he refused to take the breath tests and chose to exercise his Fourth Amendment right not to be subject to a search of his person.

The right against self-incrimination is contained in the Fifth Amendment to the United States Constitution and states in relevant part: "No person shall . . . be compelled in any Criminal Case to be a witness against himself . . . ." Section 10 of the Kansas Constitution Bill of Rights contains a comparable provision.

In *State v. Haze*, 218 Kan. 60, Syl. ¶ 1, 542 P.2d 720 (1975), our Supreme Court made clear that the privilege against self-incrimi-

nation contained within the Fifth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights "applies to communications or testimony of an accused, but not to real or physical evidence derived from him." Similarly, in *Pennsylvania v. Muniz*, 496 U.S. 582, 588-89, 110 L. Ed. 2d 528, 110 S. Ct. 2638 (1990), the United States Supreme Court stated that the privilege against self-incrimination "does not protect a suspect from being compelled by the State to produce 'real or physical evidence.' [Citation omitted.]" Rather, "the privilege 'protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature.' [Citation omitted.]" 496 U.S. at 589. Citing *Doe v. United States*, 487 U.S. 201, 210, 101 L. Ed. 2d 184, 108 S. Ct. 2341 (1988), the *Muniz* Court further stated: " '[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to be a 'witness' against himself.' " 496 U.S. at 589.

Wahweotten acknowledges that this court in *State v. Leroy*, 15 Kan. App. 2d 68, 803 P.2d 577 (1990), held that the refusal to submit to a breath test was not a communicative statement and thus was not protected by the Fifth Amendment. In reaching its decision, this court cited *Schmerber v. California*, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1832 (1966), where the United States Supreme Court held that a state-compelled blood alcohol test was neither testimony nor evidence relating to some communicative act or writing by the petitioner and was not protected by the Fifth Amendment privilege. 384 U.S. at 765. The Court noted that the Fifth Amendment privilege against self-incrimination bars the State from "compelling 'communications' or 'testimony' " but does not bar "compulsion which makes a suspect or accused the source of 'real or physical evidence.' " 384 U.S. at 764.

Nevertheless, Wahweotten contends that this court in *Leroy* improperly determined that a refusal to take a breath test was not a communicative statement. To support his argument, Wahweotten cites the following definition for "communication" contained in The American Heritage Dictionary of the English Language (4th

ed. 2000): "The exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior." Wahweotten maintains that his refusals to take the breath tests were communications because they involved the verbal exchange of thoughts between he and Harwood.

The United States Supreme Court has made clear, however, that not every spoken statement or communication is protected by the Fifth Amendment privilege against self-incrimination. For example, in *Schmerber*, the Court indicated that the Fifth Amendment privilege is a bar against *"compelling* 'communications' or testimony.' " (Emphasis added.) 384 U.S. at 764. In *South Dakota v. Neville*, 459 U.S. 553, 564, 74 L. Ed. 2d 748, 103 S. Ct. 916 (1983), the United States Supreme Court held that "a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination." The Court recognized that a refusal to take the test can take various forms, including spoken words from the suspect. Nevertheless, the Court indicated that because there is no impermissible form of coercion involved when a suspect refuses to take a test, no Fifth Amendment privilege is implicated.

The United States Supreme Court in *Muniz* extended the reasoning in *Neville* to state that the defendant could not challenge the admission of his breath test refusal into evidence on the grounds that it violated his Fifth Amendment privilege against self-incrimination. The United States Supreme Court stated:

"Muniz does not and cannot challenge the introduction into evidence of his refusal to submit to the breathalyzer test. In *South Dakota v. Neville*, 459 U.S. 553[, 74 L. Ed. 2d 748, 103 S. Ct. 916] (1983), we held that since submission to a blood test could itself be compelled, see *Schmerber v. California*, 384 U.S. 757[, 16 L. Ed. 2d 908, 86 S. Ct. 1826] (1966), a State's decision to permit a suspect to refuse to take the test but then to comment upon that refusal at trial did not 'compel' the suspect to incriminate himself and hence did not violate the privilege. *Neville, supra,* [459 U.S.] at 562-64. We see no reason to distinguish between chemical blood tests and breathalyzer tests for these purposes. Cf. *Schmerber, supra,* [384 U.S.] at 765-66, n.9." *Muniz*, 496 U.S. at 604, n.19.

At oral arguments, Wahweotten acknowledged that the United States Supreme Court has held that a test refusal does not implicate

a defendant's Fifth Amendment right against self-incrimination. Nevertheless, Wahweotten suggested that the United States Supreme Court's recent decision in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), might affect the analysis in those earlier United States Supreme Court cases.

In *Crawford,* the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment to the United States Constitution bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53-54. The Court stated that it would leave for another day any effort to set forth a comprehensive definition of "testimonial." The Court, however, stated: "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." 541 U.S. at 68.

*Crawford* dealt with those statements made by a witness who was unavailable and whom the defendant did not have an opportunity to cross-examine. The analysis in *Crawford* did not address statements made by the defendant. Moreover, as Wahweotten acknowledges, *Crawford* dealt with the Confrontation Clause of the Sixth Amendment to the United States Constitution and did not address the right against self-incrimination under the Fifth Amendment to the United States Constitution. In this case, we have clear United States Supreme Court precedent which addresses the right against self-incrimination as it applies to a breath test refusal.

The decisions in *Leroy* and *Muniz* make clear that a defendant's breath test refusal does not implicate the Fifth Amendment privilege against self-incrimination. There is no impermissible form of coercion when a law enforcement officer asks a suspect to take a breath test and the suspect then refuses. Because no Fifth Amendment privilege against self-incrimination was implicated when Wahweotten refused to take the breath test, Wahweotten's argument on this issue fails.

It is important to point out that our Supreme Court in *State v. Jones*, 279 Kan. 71, 106 P.3d 1 (2005), held that breath tests requiring the production of deep lung air for chemical analysis are searches within the meaning of the Fourth Amendment to the United States Constitution. Nevertheless, because Wahweotten's Fifth Amendment privilege was never implicated, he was not faced with the decision to choose between his Fifth Amendment right against self-incrimination and his Fourth Amendment right against unreasonable searches and seizures when asked to take the breath tests. Therefore, the doctrine of unconstitutional conditions does not apply here.

### Prosecutorial Misconduct

Next, Wahweotten contends that he was denied a fair trial and his right to due process by the prosecutor's statements during closing arguments. In his brief, Wahweotten concedes that he failed to object to the prosecutor's comments during closing argument. Nevertheless, in cases where an allegation of prosecutorial misconduct was preserved by a contemporaneous objection at trial, or was not preserved but has been determined to implicate the defendant's constitutional right to a fair trial and thereby denied the defendant's due process rights under the Fourteenth Amendment, the appellate standard of review is the same. *State v. Davis*, 275 Kan. 107, 121-22, 61 P.3d 701 (2003).

Our review for an allegation of prosecutorial misconduct requires a two-step analysis. First, the appellate court decides whether the comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. Second, the appellate court decides whether those comments constitute plain error; that is, whether the statements prejudice the jury against the defendant and deny the defendant a fair trial, thereby requiring reversal. *State v. Elnicki*, 279 Kan. 47, 58, 105 P.3d 1222 (2005).

In the second step of the two-step analysis, the appellate court considers three factors to determine whether a new trial should be granted:

"(1) whether the misconduct is gross and flagrant; (2) whether the misconduct shows ill will on the prosecutor's part; and (3) whether the evidence against the

defendant is of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors. None of these three factors is individually controlling. Before the third factor can ever override the first two factors, an appellate court must be able to say that the harmlessness tests of both K.S.A. 60-261 [refusal to grant new trial is inconsistent with substantial justice] and *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) [conclusion beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial] have been met." *State v. Tosh*, 278 Kan. 83, Syl. ¶ 2, 91 P.3d 1204 (2004).

### Burden of Proof

First, Wahweotten argues that the prosecutor improperly characterized his breath test refusals as direct evidence of intoxication and implied that the burden of proof had shifted to him on such refusals when she stated:

"The refusal to submit to the test is evidence of the defendant's intoxication, cause why else wouldn't he take the test? What other reason could there be? Why would you refuse to be tested? Why would the defendant refuse to be tested if he's not intoxicated, if he has nothing to hide?"

In arguing that the prosecutor's comments were improper, Wahweotten cites *Tosh*. There, the prosecutor asked the following questions during closing argument: " '[I]s there any evidence that it didn't happen? Is there any evidence that the things she told you didn't happen?' " 278 Kan. at 92. Our Supreme Court determined that through these comments, the prosecutor had improperly attempted to shift the burden of proof to the defendant. 278 Kan. at 92.

Wahweotten's attempt to analogize *Tosh* to the instant case is futile. Here, the prosecutor was discussing Wahweotten's refusal to submit to the breath test, which is clearly allowed under K.S.A. 2005 Supp. 8-1001(i). Although Wahweotten alleges that the prosecutor was discussing both the preliminary breath test under K.S.A. 2005 Supp. 8-1012 and the evidentiary breath test under K.S.A. 2005 Supp. 8-1001(i), the transcript indicates otherwise. The prosecutor's reference to a single "test" and the fact that the test she had last discussed was the evidentiary breath test leads to the conclusion that she was referring to the breath test under K.S.A. 2005 Supp. 8-1001(i). Under K.S.A. 2005 Supp. 8-1001(i), the refusal to

take a breath test under that statute is "admissible in evidence against the person at any trial on a charge arising out of the alleged operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both."

In setting forth the prosecutor's comments in his brief, Wahweotten takes these comments out of context. Just before the above comments, the prosecutor was discussing all of the evidence which had been presented to prove that the defendant was guilty of DUI. Then, the prosecutor referred to Wahweotten's refusal to take the breath test and indicated that the jury could infer that he was intoxicated. When referring to the defendant's refusal to take the breath test, the prosecutor was discussing the evidence that had been properly admitted at trial. The prosecutor's comments were within the wide latitude allowed in discussing the evidence.

The jury in this case was properly instructed concerning the State's burden of proof in the case. "[W]here the jury has been properly instructed the prosecution has the burden of proof, a prosecutor may argue inferences based on the balance or lack of evidence, provided that the remarks do not indirectly draw an adverse inference regarding the defendant's failure to testify. [Citations omitted.]" *State v. McKinney*, 272 Kan. 331, 346, 33 P.3d 234 (2001). Here, the prosecutor was not attempting to shift the burden of proof to the defendant but rather was commenting on inferences that could be drawn from the evidence.

### Fabrication of Testimony

Next, Wahweotten contends that the prosecutor essentially called him a liar repeatedly during closing statements. Wahweotten first cites the rebuttal portion of the prosecutor's closing argument where she stated:

"The defendant wants you to believe his version of events. But if you don't accept his whole story, then he wants to throw some reasonable doubt around, to talk about the reasonable doubt standard.

"He knows you want to hear from him so he gave you a version of events that rationalizes his behavior. Unfortunately for him, he had to make his story reasonable and he couldn't do that. He's had over a year to come up with a story that explains his behavior."

In addition, Wahweotten cites the following statement made by the prosecutor at the end of the rebuttal portion of her closing argument: "He tries to spin the facts a different way that puts him in a better light, but you've heard the testimony of Officer Harwood, of the defendant, and of Mr. Root."

In arguing that the prosecutor's statements were improper, Wahweotten cites *Elnicki*, 279 Kan. 47. During closing arguments, the prosecutor in that case described the four versions of the defendant's statements with such terms as "yarn," "fairy tale," "fabrication," "tall tale," and "spin." 279 Kan. at 58-59. Our Supreme Court discussed these various terms and indicated that each one was merely a euphemism for the word "lie." Our Supreme Court acknowledged that based on language in its earlier decisions, several of the prosecutor's statements about the defendant's first three versions of the incident arguably could be fair comment on the evidence because each of these versions was followed by another inconsistent version. Nevertheless, the prosecutor's comments about the defendant's fourth version of the incident was not based upon a later inconsistent statement and was outside the wide latitude afforded when discussing the evidence. Moreover, our Supreme Court determined that "the repeated reference throughout the closing argument to the defendant as a 'liar'—or the term's alleged euphemisms, as here—is itself improper." 279 Kan. at 63-64; see also *State v. Pabst*, 268 Kan. 501, 996 P.2d 321 (2000) (holding prosecutor's repeated assertions defendant lied improper).

This case is different from both *Elnicki* and *Pabst* in that there were not repeated references to the defendant as a liar. The prosecutor's comments in this case appear to be more akin to those in *State v. Finley*, 273 Kan. 237, 42 P.3d 723 (2002), and *State v. Moore*, 274 Kan. 639, 55 P.3d 903 (2002).

In *Finley*, the defendant argued that the following comments by the prosecutor concerning the defendant's credibility were improper:

"And Tom and Denise are the only ones that really have a motive to fabricate any lies in this case. He's not going to—he might admit to you that he uses drugs, that he used them, that he hangs out with people, but he's not going to admit that

he made meth on this day because that would be admitting to felony murder. And Tom and Denise had plenty of time to get their stories straight, to conjure up what they were going to tell you all." 273 Kan. at 247.

Our Supreme Court disagreed with the defendant's argument and determined that the prosecutor's comments were fair comment on the evidence. Our Supreme Court noted that although *Pabst* instructs that the word "lie" or its derivative should be avoided by prosecutors, the prosecutor's comment concerning motive was "a fair comment based on reasonable inferences from the evidence." 273 Kan. at 247. Moreover, our Supreme Court noted that the prosecutor's comment that the defendant and his girlfriend had time to coordinate their stories was a fair observation. 273 Kan. at 247.

Similarly, in *Moore* the defendant argued that it was improper for the prosecutor to make such comments as "nothing that you've been told here in the last two days should indicate to you that [the victim's] a liar," and that the victim's statement to her mother "paints [the defendant] as a liar." 274 Kan. at 646. Our Supreme Court held that the prosecutor's statements were not outside the considerable latitude allowed to a prosecutor when discussing the evidence. Our Supreme Court stated that the prosecutor was trying to show that the defendant's story was not feasible based on the victim's testimony at trial. Furthermore, our Supreme Court held that the prosecutor's comments were not so gross and flagrant as to deny the defendant a fair trial and did not show any ill will on the prosecutor's part. 274 Kan. at 646-47.

Here, the above comments reflect an attempt by the prosecutor to show that Wahweotten's story was not feasible in light of the other evidence introduced at trial. Moreover, the prosecutor's comments were apparently made in response to defense counsel's lengthy discussion of perjury and the defendant's credibility. During closing arguments, defense counsel stated:

"The thing that gets me is that just because he's the defendant in this case, that he's going to *lie under oath*? I mean, take what is basically a DUI case and turn it into *a perjury case*? And it's like he doesn't have anything to lose, because he's the defendant, he's going to say whatever he wants to. Well, *if he lies under oath* he's going to take—and I'm not going to belittle the matter, but we know that *a*

*perjury case* is probably more serious than a DUI case. . . . He takes the stand, he takes an oath, he subjects himself to perjury and he says, this is what happened. And that's basically where it comes in the rules that we talked about really to convict Larry you've got to come in here and believe beyond a reasonable doubt that he *lied* to you. If you have—so under those circumstances you certainly cannot believe, beyond a reasonable doubt, that Larry would come in here and *lie* to you about the reasons why he did not take that test." (Emphasis added.)

Defense counsel's references to perjury and comments concerning the defendant's credibility were outside the scope of the evidence presented at trial. Defense counsel was attempting to bolster the defendant's credibility. Defense counsel was not discussing the reasonableness of the defendant's story in the context of the other evidence presented at trial. Moreover, defense counsel's argument that Wahweotten would not risk committing perjury implied that the jury would have to find that Wahweotten lied in order to convict him. Defense counsel's personal opinion concerning the credibility of defendant was improper.

After defense counsel's comments, it was then that the prosecutor made the statements that the defendant now claims were improper comment on his credibility. No prejudicial error occurs where the questionable statements by a prosecuting attorney are provoked and made in response to prior arguments or statements by defense counsel. *Elnicki*, 279 Kan. at 64. The prosecutor's comments in this case were not improper.

*Insufficient Evidence*

Next, Wahweotten argues that the evidence was insufficient to convict him of DUI. When a defendant challenges the sufficiency of the evidence in a criminal case, the standard of review is whether, after review of all of the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Calvin*, 279 Kan. 193, 198, 105 P.3d 710 (2005).

Wahweotten was convicted of DUI under K.S.A. 2005 Supp. 8-1567(a)(3) which states: "No person shall operate or attempt to operate any vehicle within this state while . . . under the influence of alcohol to a degree that renders the person *incapable of*

*safely driving a vehicle."* (Emphasis added.) Citing *State v. Arehart,* 19 Kan. App. 2d 879, 878 P.2d 227 (1994), Wahweotten contends that although the evidence may have shown that his reflexes were somewhat diminished, there was no evidence that he was impaired to the extent that he was incapable of safely driving an automobile.

In *Arehart,* the trial court found Arehart guilty of DUI under K.S.A. 8-1567(a)(3). In setting forth its findings, the trial court implied that consumption of one alcoholic beverage would be sufficient to support a DUI conviction: " '[O]ne drink impairs you [and] if you intentionally do anything to yourself to reduce your reflexes that could avoid an accident, I'd have to say that that would be enough to show that you are impaired to the extent that you are not driving safely.' " 19 Kan. App. 2d at 882.

On appeal, Arehart argued that the trial court created a higher standard for "under the influence of alcohol" than the legislature had intended under 8-1567(a)(3). Although the version of 8-1567(a)(3) in effect when Arehart committed the alleged offense did not define "under the influence of alcohol," this court noted that our Supreme Court had consistently interpreted the phrase to mean "the defendant's physical or mental function was so impaired by the consumption of alcohol that he or she was incapable of safely driving a vehicle. [Citations omitted.]" 19 Kan. App. 2d at 881. In determining that the trial court applied an improper standard in finding Arehart guilty of DUI, this court stated:

"The legislature has explicitly prohibited driving with a certain blood alcohol concentration and driving while intoxicated to the extent that the driver cannot drive safely. These are minimum standards. *The legislature has not extended the law to prohibit driving after consuming one drink or driving while the person's reflexes are somewhat diminished."* (Emphasis added.) 19 Kan. App. 2d at 882.

Moreover, this court determined that the trial court had failed to make an evidence-based determination that the defendant was intoxicated to the extent that he could not drive safely. Instead, the trial court had assumed such impairment based on the defendant's admission that he had been drinking. This court stated that "proof of consumption of alcohol, without more, is insufficient to support a drunk driving conviction." 19 Kan. App. 2d at 882. This court

reversed the case and remanded for a new trial due to the trial court's failure to apply the appropriate standard under 8-1567(a)(3).

*Arehart* is legally distinguishable from the instant case. In *Arehart*, this court reversed and remanded for a new trial because the trial court applied an improper standard when determining whether the defendant was guilty of DUI under 8-1567(a)(3). The trial court had focused on the fact that the defendant had admitted to drinking. Here, however, there is no indication that the jury relied solely on Wahweotten's admission to drinking and thus applied an improper standard when finding Wahweotten guilty of DUI under K.S.A. 2005 Supp. 8-1567(a)(3). The evidence presented to the jury, which this court is required to consider under our standard of review, was more than Wahweotten's statement that he had been drinking.

Nevertheless, pointing out that there was no evidence that he was driving his truck in an unsafe manner other than speeding, Wahweotten contends that his case is similar to *Arehart*. Wahweotten maintains that although his reflexes may have been somewhat diminished, there was no evidence that he was so impaired as to be incapable of safely driving an automobile. As the State points out, Wahweotten suggests that it is safe for an individual to drive an automobile at an excessive speed, after consuming alcohol, when impaired to the extent that he or she is unable to perform field sobriety tests. Wahweotten seems to suggest that the State needed to present more evidence of his impairment in order for him to be found *incapable* of safely driving an automobile.

When discussing the distinctions between DUI and reckless driving, our Supreme Court noted: "One does not need to swerve all over the road or drive through another's yard to be guilty of driving under the influence of alcohol or drugs." *State v. Mourning*, 233 Kan. 678, 682, 664 P.2d 857 (1983). Our Supreme Court further stated that "a person under the influence of alcohol may actually drive in a straight line in the proper lane of traffic down the street, although incapable of safely operating the vehicle in accordance with traffic regulations that may be encountered." 233 Kan. at 682.

The evidence introduced by the State in this case was more than sufficient to find that Wahweotten was incapable of safely driving an automobile. Upon stopping Wahweotten for speeding, Harwood smelled a strong odor of alcohol and noticed that Wahweotten's eyes were bloodshot and his speech was slightly slurred. When asked if he had been drinking, Wahweotten admitted to Harwood that he had had a couple of drinks. At trial, Wahweotten admitted that he had been drinking at a bar just before he was stopped by Harwood. Although Wahweotten testified that he drank only one beer and part of a second one, Root indicated that they were drinking at a faster pace. Root testified that he and Wahweotten were drinking at about the same pace and that he had had two or three drinks at the bar. Although Wahweotten indicated that he had performed well on the field sobriety tests, Harwood testified about numerous signs of impairment exhibited by Wahweotten during the tests. Harwood gave Wahweotten the opportunity to take a breath test on the Intoxilyzer 5000, but Wahweotten ultimately refused such testing. As discussed above, Wahweotten's refusal to submit to the Intoxilyzer test was admissible evidence against him at trial. See K.S.A. 2005 Supp. 8-1001(i); *Jones*, 279 Kan. at 80.

A review of all of the evidence in the light most favorable to the State leads to the inevitable conclusion that a rational jury could have found Wahweotten guilty of DUI beyond a reasonable doubt.

*Cumulative Error*

Finally, Wahweotten argues that the combination of errors in this case deprived him of a fair trial. "Multiple trial errors may require reversal of a defendant's conviction if the cumulative effect of the errors substantially prejudiced the defendant and denied him a fair trial. No prejudicial error may be found if the evidence against the defendant was overwhelming. [Citation omitted.]" *State v. Schoonover*, 281 Kan. 453, 518-19, 133 P.3d 48 (2006).

The only error discovered in this case was that the trial court should have instructed the jury to consider evidence of Wahweotten's preliminary breath test refusal for only the traffic infraction

charge. Nevertheless, such failure did not constitute reversible error. Wahweotten's argument on this issue fails.

Affirmed.