NOT DESIGNATED FOR PUBLICATION

No. 120,221

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENNETH EUGENE KLENKLEN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed March 27, 2020. Affirmed.

*Kevin P. Shepherd*, of Law Office of Kevin P. Shepherd, of Topeka, for appellant.

*Joshua A. Ney*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before HILL, P.J., GREEN and WARNER, JJ.


PER CURIAM: Following a jury trial, Kenneth Eugene Klenklen was convicted on charges of driving under the influence (DUI), transporting an open container of alcohol, speeding, and driving on an expired license. Klenklen timely appeals his DUI conviction, arguing that the State presented insufficient evidence for a finding of guilt beyond a reasonable doubt. For reasons stated later, we disagree.

Here, Klenklen argues that the State failed to prove beyond a reasonable doubt that he was so impaired that he could not safely operate his vehicle. Nevertheless, the State presented more than sufficient evidence to show that Klenklen was, in fact, too impaired

1

to drive. Specifically, the State introduced evidence that Klenklen smelled strongly of alcohol, that he had an open container of alcohol in his car within his reach, that he had bloodshot and watery eyes, that he appeared sluggish, that he could not maintain his balance while performing field sobriety tests, that he swayed back and forth during the tests, that he admitted to drinking earlier that day, and that he had difficulty following the officer's instructions. Klenklen maintains that there are alternative theories to explain why he was not drunk and why he could not perform the field sobriety tests—the same theories he presented at his jury trial. Thus, under a well-known appellate standard, this court is barred from reweighing the evidence or reevaluating witness credibility made below. When viewing the evidence in the light most favorable to the State, a reasonable fact-finder could believe beyond a reasonable doubt that Klenklen was impaired to the point that he could not operate his vehicle safely. So, we conclude that the State presented sufficient evidence to support Klenklen's DUI conviction and affirm the trial court.

On August 5, 2016, Oskaloosa Police Officer Jared Bammes stopped Klenklen for speeding after he saw Klenklen driving 52 mph in a 40-mph zone. When Bammes neared Klenklen's car, he smelled a consumed alcoholic beverage odor and heavy cigarette smoke coming from inside the car. He also noticed that Klenklen's speech was slurred. Bammes asked Klenklen for his driver's license and proof of insurance. Although Klenklen was able to provide his proof of insurance, he told Bammes that he did not have his driver's license. Klenklen gave Bammes his name and birthdate. While Klenklen was looking for his documentation, Bammes saw Klenklen smoking a cigarette and noticed an open Bud Light beer bottle in the rear center console cupholder and within Klenklen's reach. Bammes asked Klenklen if he had been drinking that night, and Klenklen responded, "No, sir." Bammes asked Klenklen about the Bud Light bottle in the rear cupholder near him, and Klenklen answered, "Who knows?" Klenklen stated that the bottle had not been from that night.

Upon sending Klenklen's personal information to dispatch, Bammes learned that Klenklen's driver's license had expired on May 8, 2016. Bammes further learned that Klenklen had a previous DUI conviction from April 2012. Bammes then continued questioning Klenklen about the open container in the rear cupholder. Klenklen responded that he had people in his car earlier that day but assured Bammes, "I'm good, I'll tell you that." Bammes once again asked Klenklen if he had been drinking, and Klenklen responded he had one beer at 3 or 4 pm.

Bammes suspected that Klenklen was inebriated, so Bammes requested backup because he was not certified to administer standard field sobriety tests (SFSTs). Sometime later, Jefferson County Sheriff's Deputy Timothy Bacon arrived to help Bammes with his investigation. Bacon was certified to administer SFSTs and understood that he was called to help administer SFSTs on Klenklen. Bammes told Bacon that he stopped Klenklen for speeding, that he found an open Bud Light bottle in the car within Klenklen's reach, that Klenklen admitted to having one beer around 3 or 4 pm, and that he could only smell heavy cigarette smoke coming from the vehicle.

When Bacon neared the vehicle, he noticed the smell of consumed alcoholic beverage. He saw the open Bud Light bottle in the rear center console. Bacon also noticed that Klenklen's eyes were bloodshot and kind of watery and that Klenklen was smoking and had some sort of mint in his mouth. Bacon asked Klenklen how much alcohol had he drank that night. Klenklen responded, "Not shit." Shortly afterwards, Bacon asked Klenklen to step out of the car so that Bacon could administer the SFSTs. He also asked Klenklen when he had his last alcoholic drink, and he responded, "Three or four hours ago." Klenklen then admitted he had been drinking Bud Light beer just like the one that was open in the rear center console in his vehicle.

Bacon chose a smooth, flat surface on the shoulder of the road to administer the SFSTs. Bacon began with the walk-and-turn test. According to Bacon, this test is

3

designed to identify several impairment indicators, such as loss of balance during the instruction phase, starting the test too soon, stopping during the test, stepping off the line, using arms to balance, making an improper turn, or taking too many steps. While Bacon gave instructions on how to perform the test to Klenklen, Klenklen seemed to have difficulty following those instructions. For example, Klenklen tried starting the test approximately four times before Bacon finished giving him directions, even though Bacon told him to wait until after instructions were given. During this time, Klenklen also had trouble maintaining his balance, he appeared to sway back and forth, and he confused his left and right feet on two occasions.

Before officially beginning the test, Klenklen told Bacon that he had "health problems," but Bacon told Klenklen to start the test because Klenklen already tried starting the test several times and showed Bacon he could walk. During the test, Klenklen exhibited other signs of impairment: he raised his arms away from his body, he did not walk heel-to-toe all the way through the test as instructed, he stepped off the line, and he made an improper turn. Bacon determined that Klenklen had failed the walk-and-turn test.

Bacon then gave Klenklen instructions to perform the one-leg stand test, which is designed to identify the following impairment indicators: swaying, using arms to balance, and putting the foot down on the ground during the test. During the test, Bacon saw Klenklen exhibiting various signs of impairment: he raised his arms up to help with balance, he lost his balance and his foot touched the ground several times, and he swayed from side to side. Bacon determined that Klenklen had failed the one-leg stand test. Based on Bammes' and Bacon's investigation and on Klenklen's failed SFSTs, Bammes arrested Klenklen for suspicion of DUI, transporting an open container of alcohol, speeding, and driving with an expired license.

After handcuffing Klenklen and putting him in Bammes' patrol car, Bammes retrieved the open Bud Light bottle from the center rear console cupholder in Klenklen's vehicle. He noted that there was a little less than half a bottle of beer left. Bacon discovered a small empty bottle of Fireball whiskey lodged between the center console and the driver's seat of Klenklen's car. Bammes emptied the Bud Light bottle and bagged both the Bud Light and Fireball bottles for evidence. Bammes then transported Klenklen to the jail, and while Klenklen was in his patrol car, Bammes noted that he could smell the alcohol on Klenklen.

On November 8, 2016, the State charged Klenklen with DUI in violation of K.S.A. 2016 Supp. 8-1567(a)(3), transporting an open container, speeding, and driving without a valid driver's license. At the jury trial on August 21, 2018, the State called Bammes and Bacon to testify. Through Bammes and Bacon, the State presented the following evidence:  (1) Klenklen had been speeding; (2) both officers noticed that Klenklen had an odor of alcohol in his vehicle and during the SFSTs; (3) Klenklen had bloodshot and kind of watery eyes; (4) Klenklen was heavily smoking and had a mint in his mouth—an indication that he was attempting to mask the smell of alcohol; (5) Klenklen was driving on an expired driver's license; (6) Klenklen had a prior DUI; (7) there was an open and partially full bottle of Bud Light in the center rear console cupholder within Klenklen's reach; (8) Klenklen's speech was slurred; (9) Klenklen appeared sluggish; (10) Klenklen exhibited a lack of balance at several points during the SFSTs; (11) Klenklen had difficulty following Bacon's instructions; (12) Klenklen failed the SFSTs; (13) Klenklen kept changing his story a bit each time, but ultimately admitted to drinking Bud Light beer earlier in the day; (14) there was a small empty bottle of Fireball whiskey in Klenklen's vehicle; and (15) Bammes noticed that Klenklen had an odor of alcohol in the patrol car. Specifically, both officers testified that based on what they saw, they believed that Klenklen was impaired to the point it would affect his ability to safely drive his vehicle.

Klenklen testified in his defense. He stated that he was not drunk during the stop and that he had several health issues that prevented him from passing the SFSTs, such as hemochromatosis and Parkinson's disease. He further testified that these health issues affected his speech, balance, and coordination. Klenklen stated that he specifically told the officers that he could not perform the SFSTs because of these health issues. Yet, he also admitted that he drank three Bud Light beers earlier in the day but had stopped drinking by 4:30 or 5 p.m.

After deliberating, the jury found Klenklen guilty on all four counts. Klenklen's attorney moved for a judgment of acquittal based on lack of evidence, but the trial court denied the motion, stating that a reasonable man could find Klenklen guilty beyond a reasonable doubt based on the evidence presented. On October 4, 2018, the trial court sentenced Klenklen to one year in jail, but suspended the sentence, requiring Klenklen to serve only 48 hours in jail and 120 hours of electronic monitoring on house arrest. The trial court further ordered that Klenklen be placed on unsupervised probation for one year following his sentence. Klenklen timely appeals.

*Was There Sufficient Evidence to Support Klenklen's DUI Conviction?*

*Standard of Review*

When the sufficiency of the evidence is challenged in a DUI case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Duncan*, 44 Kan. App. 2d 1029, 1034, 242 P.3d 1271 (2010). Circumstantial evidence is sufficient for conviction if it provides a reasonable basis from which the fact-finder may reasonably infer each element. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). It is only in

6

rare cases in which trial testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Ramirez*, 50 Kan. App. 2d 922, 936, 334 P.3d 324 (2014).

*Discussion*

Klenklen was convicted of DUI under K.S.A. 2016 Supp. 8-1567(a)(3), which states that no person shall "operat[e] or attempt[] to operate any vehicle [. . .] while [. . .] under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle."

Klenklen argues that a rational fact-finder could not have found him guilty of DUI beyond a reasonable doubt because the State failed to produce direct evidence showing that Klenklen was so impaired he could not safely operate his vehicle. Klenklen contends that the evidence presented at trial shows that he only consumed alcohol at some point before driving his car. Specifically, Klenklen points out that Bammes was not trained to spot signs of impairment and could not properly suspect that Klenklen was impaired based only on the open container in Klenklen's vehicle, his admission that he had been drinking much earlier in the day, and the fact that he safely pulled his vehicle over for the stop. It should be noted that Klenklen does not challenge his convictions for transporting an open container of alcohol, speeding, or driving on an expired license.

The evidence the State introduced at trial was more than sufficient to find that Klenklen was incapable of safely driving an automobile. Upon stopping Klenklen for speeding, Bammes smelled an odor of consumed alcohol and heavy cigarette smoke coming from inside Klenklen's car. Bammes noticed that Klenklen slurred his speech and appeared sluggish throughout each interaction. He saw an open and partially full Bud Light bottle in the rear cupholder well within Klenklen's reach. Klenklen could not produce his driver's license, and when Bammes ran Klenklen's information, he learned

7

that Klenklen had an expired license and had a previous DUI conviction. Klenklen admitted to Bammes that he had been drinking earlier that day. Based on this information, Bammes contacted Bacon to help perform the SFSTs.

When nearing Klenklen, Bacon also smelled an odor of consumed alcohol coming from the vehicle. He noted that Klenklen's eyes were bloodshot and watery. He saw the open Bud Light bottle in the rear cupholder. Klenklen admitted to Bacon that he had been drinking Bud Light beer—like the one in his car—earlier that day. While Bacon administered the walk-and-turn and one-leg stand tests, both he and Bammes smelled alcohol on Klenklen. They both saw him having difficulty listening and following Bacon's instructions. They both saw Klenklen sway and lose his balance at several points throughout the testing. They both witnessed Klenklen fail to perform the walk-and-turn and the one-leg stand tests correctly. Based on those observations, both officers determined that Klenklen was impaired to the point it would affect his ability to safely drive. So, Bammes arrested Klenklen. After arresting Klenklen, the officers found an empty bottle of whiskey in Klenklen's car, which was lodged between the center console and the driver's seat. While transporting Klenklen to the jail, Bammes also noted that Klenklen had a strong odor of alcohol coming from him.

This court has upheld DUI convictions under K.S.A. 2016 Supp. 8-1567(a)(3) based on similar circumstances in other cases. See *Duncan*, 44 Kan. App. 2d at 1034-35 (finding sufficient evidence of DUI was presented where defendant smelled of alcohol, had bloodshot and watery eyes, slurred his speech, had open alcoholic containers in his vehicle, failed the same SFSTs, and admitted to drinking earlier that day); *State v. Wahweotten*, 36 Kan. App. 2d 568, 591, 143 P.3d 58 (2006) (finding sufficient evidence of DUI was presented where defendant was speeding, had slurred speech and bloodshot eyes, smelled of alcohol, admitted to drinking earlier that day, and failed the same SFSTs); *State v. Huff*, 33 Kan. App. 2d 942, 945-46, 111 P.3d 659 (2005) (finding sufficient evidence of DUI was presented where defendant was speeding, driving off the

roadway, had slurred speech and bloodshot eyes, smelled of alcohol, and had a prior DUI conviction).

Klenklen provides various alternative explanations for his conduct during the traffic stop, but in doing so, he asks this court to reweigh the evidence and to reevaluate witness credibility. This court cannot do that. Viewing all of this evidence in the light most favorable to the State, a rational fact-finder could find that Klenklen consumed alcohol before operating a vehicle and that, based on his demeanor during the traffic stop and his performance on the field sobriety tests, such consumption impaired his ability to safely drive his vehicle. In other words, a rational fact-finder could find beyond a reasonable doubt that Klenklen was operating his vehicle while under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle. For these reasons, we conclude that the State presented sufficient evidence to convict Klenklen of DUI under K.S.A. 2016 Supp. 8-1567(a)(3).

Affirmed.