(261 P.3d 923)
No. 104,046

STATE OF KANSAS, *Appellee*, v. STEVEN NYE, *Appellant*.

Opinion filed July 29, 2011.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Keith Schroeder*, district attorney, *Daniel D. Gilligan*, assistant district attorney, and *Steve Six*, attorney general, for appellee.

Before GREENE, C.J., MALONE, J., and KNUDSON, S.J.

MALONE, J.: Steven Nye appeals his conviction of felony driving under the influence of alcohol (DUI). Nye claims: (1) the district court erred by admitting evidence that he was driving on a suspended driver's license; (2) the State committed prosecutorial misconduct in closing argument; and (3) the district court did not make the necessary findings to impose a $2,500 fine for the DUI conviction. We affirm Nye's conviction, but we vacate the fine and remand for consideration of appropriate findings.

On February 1, 2009, at approximately 2 a.m., Reno County Deputy Sheriff Levi Blumanhourst received a call from his dispatcher relating a report of a white Chevrolet Silverado truck with Kansas tag number 53251 driving recklessly, failing to stay within its own lane, and speeding. Sometime after receiving the call, Blumanhourst observed a white pickup truck driving on K-96 highway, south of Hutchinson. Blumanhourst confirmed it was the truck reported earlier, and he turned on his video camera to record the events. As Blumanhourst followed the pickup, the truck drove onto the centerline and the outer fog line of the highway several times. Blumanhourst then saw the left tires of the truck travel approximately 1 foot over the centerline, at which point the driver overcorrected and drove across the lane onto the fog line. Blumanhourst activated his emergency lights, and the driver stopped approximately 7 to 10 seconds later.

Blumanhourst approached the truck and spoke to the driver, later identified as Nye. Blumanhourst immediately smelled alcohol when he approached the truck. He also observed that Nye had bloodshot eyes and his speech was slurred. When Blumanhourst asked for Nye's driver's license, Nye said it was suspended. Blumanhourst asked Nye how much he had to drink, but Nye denied having anything to drink. Blumanhourst went back to his vehicle and verified that Nye's driver's license was suspended. Based on this information, Blumanhourst arrested Nye for driving while suspended (DWS). As Blumanhourst patted down Nye for officer safety, he discovered marijuana in Nye's pocket. Blumanhourst then transported Nye to the Law Enforcement Center (Center).

At the Center, Blumanhourst advised Nye of his *Miranda* rights and again asked him if he had anything to drink. Nye stated he had consumed two 24-ounce beers, but he did not say exactly when he had consumed the beers. Blumanhourst asked Nye to perform field sobriety tests and Nye agreed. Blumanhourst observed six out of eight clues on the walk-and-turn test and two out of four clues on the one-leg-stand test. Nye's performance on the field sobriety tests was videotaped. Blumanhourst then provided Nye with the implied consent notices and asked if he would take a breath test, but Nye refused to answer the question. Bluman-

hourst told Nye that if he refused to answer, he would consider that a refusal to take the test. Nye did not submit to breath testing.

On February 3, 2009, the State charged Nye with one count of felony DUI and one count of misdemeanor possession of marijuana. The complaint was later amended to add one count of misdemeanor DWS. On January 14, 2010, Nye pled guilty to the two misdemeanors. The jury trial commenced that same day, and Blumanhourst testified for the State. Over Nye's objection, Blumanhourst testified that he had arrested Nye and transported him to the Center because he was driving on a suspended license. The jury also viewed the videotape of the stop on the highway and the field sobriety testing conducted at the Center. Nye did not present any evidence. The jury found Nye guilty of DUI. On February 12, 2010, the district court sentenced Nye to 6 months' imprisonment in the county jail, with 12 months' postrelease supervision. The district court also fined Nye $2,500. Nye timely appealed his conviction and sentence.

On appeal, Nye claims the district court erred by admitting evidence that he was driving on a suspended driver's license. Nye also claims the State committed prosecutorial misconduct in closing argument. Finally, Nye claims the district court did not make the necessary findings to impose a $2,500 fine for the DUI conviction. We will address each of these claims in turn.

## EVIDENCE OF DRIVING ON A SUSPENDED LICENSE

Nye first claims the district court erred by admitting evidence that he was driving on a suspended driver's license. At trial, Nye objected that the admission of the evidence violated K.S.A. 60-455, and he makes this same argument on appeal.

We will provide some additional facts in order to analyze this issue. In Nye's opening statement, his counsel stated that Nye's erratic driving was due to the windy conditions on the night of his arrest. He also stated that Nye had been transported to the Center for field sobriety testing because it was too windy that night to conduct the tests on the road. Specifically, Nye's counsel stated:

"He was traveling wee morning hours. Windy night across K-96. Middle of winter, extremely windy night. The evidence will, will show that it was so windy that law

enforcement upon contact with Mr. Nye actually transporting, transported him to the Law Enforcement Center basement in order to conduct field sobriety tests due to it being too windy to conduct them out on the side of the road. So it was a very, very windy night.

. . . .

". . . The officer will, will testify that he witnessed this vehicle move onto the center line with its left tire, and move onto the fog line with its right tire several times. The officer will also state that at least one time he witnessed the left side tire of this vehicle cross on over the center line, the officer's testimony would be by a foot.

". . . The evidence will also show that, again, it was [an] extremely windy evening."

When the State introduced the videotape of the stop, Nye objected because the statements on the video concerning his driver's license being suspended had not been redacted. Nye argued that the admission of the evidence violated K.S.A. 60-455. The district court overruled the objection, stating:

"To admit evidence under 60-455 the court has to find the element is relevant to prove a material fact, that the material fact is in dispute, and that the probative value outweighs the prejudicial value. In the old days it would clearly come in under res gestae, but we don't have that any more.

"But based upon the opening statements the court finds a material fact was in issue why the defendant was taken to the Law Enforcement Center for the testing. The state indicated he was taken because of the arrest for driving while suspended. The defense says it was because it was too windy. . . .

"So the court finds the first two factors are met and finds that the probative value outweighs the prejudicial value so I will allow in evidence of why the defendant was transported, but I will instruct the jury at the end of the case that they will consider that fact only to establish why the defendant was taken to the Law Enforcement Center."

After the jury viewed the videotape, Blumanhourst testified that Nye told him that his driver's license was suspended. Nye again objected on the ground that admission of the evidence violated K.S.A. 60-455, and the district court overruled the objection.

At the time of Nye's arrest, K.S.A. 60-455 stated:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove

some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

We note that K.S.A. 60-455 was amended by the legislature effective April 30, 2009. However, the statutory amendment does not affect our analysis of Nye's claim on appeal.

A district court's analysis of whether evidence is admissible under K.S.A. 60-455 requires several steps. The district court must first determine that the evidence is relevant to prove a material fact. An appellate court reviews the district court's relevance determination for abuse of discretion, but appellate review for materiality is de novo. Next, the district court must determine that the material fact is in dispute. The district court must further determine that the probative value of the evidence outweighs the potential for producing undue prejudice. Appellate review of this determination is for abuse of discretion. Finally, the district court must give a limiting instruction informing the jury of the specific purpose for admitting the evidence. *State v. Wells*, 289 Kan. 1219, 1226-27, 221 P.3d 561 (2009).

Nye argues that the evidence that he drove with a suspended driver's license was not relevant to prove a material fact. He argues that the reason he was transported to the Center was not material because it had no effect on the determination of whether he was driving under the influence of alcohol. Nye also argues that the reason he was transported to the Center for field sobriety testing was not in dispute because he never contested the fact that he was transported to the Center as a result of the arrest. Finally, Nye argues that the probative value of the evidence was outweighed by the prejudicial effect.

The evidence that Nye was arrested and transported to the Center for driving on a suspended license was relevant to prove a material fact. The State introduced evidence other than the field sobriety tests to bolster its argument that Nye committed the crime of DUI. For example, Blumanhourst testified that he saw Nye driving erratically, Nye was slow to pull over after Blumanhourst activated his lights, Nye's eyes were bloodshot, and Nye smelled like alcohol. In contrast, Nye argued that his erratic driving was due to

the windy conditions. During cross-examination of Blumanhourst, Nye repeatedly asked about the level of wind on the night in question. Had the wind been so bad that it was the reason for Blumanhourst transporting Nye to the Center for field sobriety testing, this fact would have bolstered Nye's defense at trial. Therefore, the reason for the transport was a material fact, because it had "a legitimate and effective bearing on the decision in the case." *Wells,* 289 Kan. 1219, Syl. ¶ 1.

Once materiality is determined, the court must decide whether the material fact is disputed. Our Supreme Court has characterized the term "disputed" in this context as "the element or elements being considered must be substantially at issue in the case." 289 Kan. 1219, Syl. ¶ 1. Here, the reason for the transport—whether it was due to the wind or to something else—was substantially at issue as it related to Nye's defense of windy conditions. The State's theory was that Nye drove erratically because he was intoxicated; Nye argued that it was due to fatigue and windy conditions. The reason for the transport does not become undisputed simply because Nye presented an alternative theory rather than directly challenging the State's explanation. Therefore, the district court correctly determined that the evidence was probative of and relevant to a disputed material fact.

However, even if evidence is both probative and material, the district court must still determine whether the probative value of the evidence outweighs its potential for producing undue prejudice. Appellate courts review this determination for abuse of discretion. 289 Kan. at 1227. "Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. [Citation omitted.]" *State v. Gant,* 288 Kan. 76, 81-82, 201 P.3d 673 (2009).

The district judge found that the probative value of why Nye was transported to the Center outweighed the prejudicial effect. Given the substance of Nye's defense, the district court's finding was not arbitrary, fanciful, or unreasonable. Furthermore, when the record is viewed as a whole, the fact that the jury heard evi-

dence that Nye was driving on a suspended license was not likely a major contributing factor to his conviction of DUI. Therefore, we conclude the district court did not abuse its discretion in finding that the probative value of the evidence outweighed the prejudicial effect.

Finally, " 'to avoid error, the trial court must give a limiting instruction informing the jury of the specific purpose for admission.' " *State v. Decker*, 288 Kan. 306, 311, 202 P.3d 669 (2009) (quoting *Reid*, 286 Kan. 494, Syl. ¶ 3). Here, the district court correctly gave a limiting instruction that stated: "Evidence has been admitted tending to prove that Steven Nye committed the offense of driving while suspended. This evidence may be considered solely for the purpose of proving why the officer transported Steven Nye to the Law Enforcement Center." For all these reasons, we conclude the district court did not err by admitting evidence that Nye was driving on a suspended driver's license.

## PROSECUTORIAL MISCONDUCT

Next, Nye claims the State committed prosecutorial misconduct in closing argument which denied him a fair trial. Specifically, Nye alleges that the prosecutor committed misconduct by: (1) asking the jury if someone could be so tired that his or her body would "ooze" an alcoholic odor, (2) referring to reports of erratic driving made to law enforcement; and (3) shifting the burden of proof to Nye.

Nye objected at trial to some of the statements he challenges on appeal and did not object to others. However, a claim of prosecutorial misconduct based on comments made during voir dire, opening statements, or closing argument which is not evidence will be reviewed on appeal even when a contemporaneous objection was not made at trial. *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009).

Appellate review of an allegation of prosecutorial misconduct involving improper comments to the jury requires a two-step analysis. First, the appellate court decides whether the comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. Second, if misconduct is found, the appellate

court must determine whether the improper comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. McReynolds*, 288 Kan. 318, 323, 202 P.3d 658 (2009).

## Oozing the odor of alcohol

During the rebuttal portion of his closing argument, the prosecutor stated:

"[Mr. Oyedemi, the prosecutor]: This much we know: That the defendant had odor of alcohol coming from him when the officer made contact with him. Could somebody be tired to a point that his body would just be oozing odor of alcohol? How tired are you going to be?

"Ms. Corrado [Defense counsel]: Objection, judge, states facts not in evidence; the body—

"The Court: The jury will determine—I don't need argument, Miss Corrado. The jury will determine what the facts are.

"Proceed, Mr. Oyedemi."

Nye argues that there was no evidence produced at trial regarding the relationship between fatigue and the odor of alcohol; therefore, the comments were outside the evidence produced at trial. Because the district court did not instruct the jury to disregard the statements, Nye argues that the jury could have considered this argument. The State contends that the comments were in response to Nye's reliance on fatigue as the explanation for his failure of the field sobriety tests. The State also points out that jury instruction number 3 instructed the jurors to use common sense, knowledge, and experience in their deliberations. The State asserts that it was fair argument to point out to the jury that Nye's fatigue did not explain the odor of alcohol coming from his truck.

"As a fundamental rule in closing arguments, prosecutors must confine their comments to matters in evidence. [Citations omitted.] However, a prosecutor is allowed considerable latitude in discussing the evidence and drawing reasonable inferences from that evidence. [Citations omitted.] We have held that a prosecutor is given wide latitude in the language and manner of presenting argument and may even use picturesque speech as long as he or she does not refer to facts not disclosed by the evidence. [Citation omitted.]" *State v. McCaslin*, 291 Kan. 697, 722, 245 P.3d 1030 (2011).

Nye's defense strategy relied partly on fatigue as the explanation for his failure of the field sobriety tests. During closing argument, Nye's counsel pointed out that it was 3 a.m. when Blumanhourst stopped Nye. Nye's counsel also listed the reasons why Blumanhourst stopped Nye's vehicle, and then stated these were "[t]hings that could be associated with [being] tired." Additionally, Nye's counsel suggested that Nye's slurred speech when talking with Blumanhourst could be attributed to his fatigue. In commenting on whether fatigue could lead to the odor of alcohol, the prosecutor was rebutting Nye's argument that his behavior was explained by fatigue. Moreover, Blumanhourst testified that he smelled the odor of alcohol when he approached Nye's truck, so the prosecutor's comment was based on evidence at trial. We conclude the prosecutor's comments were within the wide latitude allowed to the prosecutor when discussing the evidence.

*Report of erratic driving*

Also during rebuttal argument, the prosecutor stated:

"[Mr. Oyedemi]: And remember, when people call into law enforcement talking about erratic driving, talking about drunk drivers, it is not often that law enforcement officers would be able to find that person. In this instance—

"The Court: There you're going too far, Mr. Oyedemi. The evidence of the 911 call, don't go into that. That's not evidence in this case."

Nye argues that the prosecutor's comment was outside the evidence produced at trial. As the State points out, however, Blumanhourst testified during the trial regarding the report of erratic driving. The district court admitted this evidence for the limited purpose of explaining why Blumanhourst began to follow Nye's truck. The district court instructed the jury not to consider the evidence for the truth of the matter asserted.

It appears that the prosecutor was about to discuss the substance of the dispatch call, which would have violated the limiting instruction, so the judge intervened and stopped the prosecutor's argument. Although the prosecutor may have been on the path to improper commentary, the district court prevented the prosecutor from commenting on the specifics of the dispatch call during closing argument. Given the evidence presented at trial and the district

court's intervention during closing argument, the prosecutor's isolated comment about the report of erratic driving did not constitute misconduct.

## *Shifting the burden of proof*

Next, Nye argues that the prosecutor made comments that shifted the burden of proof to Nye. To support this argument, Nye cites the following excerpts from the prosecutor's rebuttal argument:

"MR. OYEDEMI [prosecutor]: Yes, Your Honor. Was the defendant impaired by alcohol when he drove his Chevy truck on the 1st of February, 2009, and put his life and the life [*sic*] of other road users in danger? The, the defendant knew it, he knew he was impaired. Why we—

"MS. CORRADO [defense counsel]: Objection, judge.

"THE COURT: What reason?

"MS. CORRADO: Well, I would say that he is invading the province of the jury.

"THE COURT: Overruled. He's, it's for the jury to decide. I've instructed them that statements are not evidence, counsel's statements are not evidence.

"Proceed, Mr. Oyedemi.

"MR. OYEDEMI: Thank you, Your Honor. The defendant knew it. If not, why did he refuse to take the breath test?

. . . .

"[MR. OYEDEMI]: We all know the result will be incriminating if he had taken it [the breath test]. Why is he now saying he's not guilty? He knew back then, 1st of February 2009. Now he's saying he's not guilty. Does that make sense to you?

. . . .

"[MR. OYEDEMI]: . . . When we did the voir dire yesterday there was an individual who mentioned to you that while he was driving his friend was drunk, he went to pick him up. When the officer made contact with, with the vehicle they thought he was the one who was drinking. He took the test twice. He had that opportunity and grabbed it with both hands. He took the test twice. He knew he wasn't drinking, he knew he didn't have anything to hide. That was what somebody who believed he wasn't guilty would do; grasp the opportunity to show that he wasn't impaired.

"MS. CORRADO: Judge, I understand about the objection—

"THE COURT: What's the objection?

"MS. CORRADO: Shifting, shifting the burden of proof, judge.

"THE COURT: Okay. He can comment about the failure to take the test. The burden of proof always rests with the defendant [*sic*], but it's proper argument to, to make argument regarding the refusal to take the test.

"Proceed, Mr. Oyedemi.

. . . .
"[MR. OYEDEMI]: . . . Count the number of times the officer asked him, will you take this test.
"THE COURT: Time.
"Mr. Oyedemi: About six times.
"THE COURT: Time.
"MR. OYEDEMI: Thank you, Your Honor. The defendant is guilty. He knows it."

Nye contends that the prosecutor's argument that intoxication may be inferred from his refusal to take the breath test is simply another way of arguing that Nye had some obligation to take the breath test to prove his innocence. According to Nye, the prosecutor's argument improperly shifts the burden to Nye to prove his innocence. As Nye concedes, a similar argument was rejected by this court in *State v. Wahweotten*, 36 Kan. App. 2d 568, 584-85, 143 P.3d 58 (2006), *rev. denied* 283 Kan. 933 (2007). In *Wahweotten*, the defendant was charged with DUI, among other offenses, and during closing argument the prosecutor commented on the defendant's refusal to submit to a breath test. Specifically, the prosecutor stated:

" 'The refusal to submit to the test is evidence of the defendant's intoxication, cause why else wouldn't he take the test? What other reason could there be? Why would you refuse to be tested? Why would the defendant refuse to be tested if he's not intoxicated, if he has nothing to hide?' " 36 Kan. App. 2d at 584.

On appeal, this court noted that under K.S.A. 2005 Supp. 8-1001(i), the refusal to take a breath test is "admissible in evidence against the person at any trial on a charge arising out of the alleged operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both." See 36 Kan. App. 2d at 585. This court observed that the prosecutor referred to the defendant's refusal to take the breath test and indicated that the jury could infer that he was intoxicated. This court concluded that the prosecutor was discussing evidence that had been properly admitted at trial, and the comments were within the wide latitude allowed in discussing the evidence. 36 Kan. App. 2d at 585.

Here, as in *Wahweotten*, the prosecutor was discussing Nye's refusal to take the breath test. Evidence of a driver's refusal to take

a breath test is admissible in a DUI prosecution pursuant to K.S.A. 2010 Supp. 8-1001(k)(8), which provides: "[R]efusal to submit to [breath] testing may be used against the person at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both." In fact, this warning is included in the implied consent notices that are required to be given to any driver before a breath test can be administered by a law enforcement officer. K.S.A. 2010 Supp. 8-1001(k). Blumanhourst had explicitly informed Nye that his refusal to submit to breath testing could be used against him at trial. The jury heard evidence that Nye had refused the breath test, and the prosecutor's argument that intoxication may be inferred from Nye's refusal to take the breath test was consistent with the evidence and with K.S.A. 2010 Supp. 8-1001(k)(8).

The prosecutor's comments about Nye's refusal to take the breath test were very similar to the prosecutor's comments in *Wahweotten*. Nye argues that *Wahweotten* was wrongly decided. We are not inclined to reject the holding in *Wahweotten*, and we note that subsequent panels of this court have followed the same logic. See *State v. Doyle*, No. 101,056, unpublished opinion filed February 26, 2010, *rev. denied* 290 Kan. 1097 (2010), slip op. at 12 (prosecutor's comment on defendant's refusal to take breath test was not burden shifting); *State v. Newburn*, No. 96,535, unpublished opinion filed January 11, 2008, *rev. denied* 286 Kan. 1184 (2008), slip op. at 11-13 (same holding).

As a general rule, a prosecutor's comments in closing argument on the defendant's refusal to take a breath test, including the inference of intoxication that may be drawn from the evidence, are within the wide latitude that a prosecutor is allowed in discussing the evidence. Nevertheless, we perceive a distinction between the prosecutor's comments herein and those comments approved by this court in *Wahweotten*. We are particularly concerned with the following comments made by the prosecutor herein:

"We all know the result will be incriminating if he had taken it [the breath test]. Why is he now saying he's not guilty? He knew back then, 1st of February, 2009. Now he's saying he's not guilty. Does that make any sense to you?
 . . . .

"... The defendant is guilty. He knows it."

We find that these comments go beyond a prosecutor's fair argument that intoxication may be inferred from the defendant's refusal to take a breath test. Nye's refusal to take the breath test does not justify the prosecutor's comment that Nye "knew back then" that he was guilty, and "[h]e knows it" now. We believe these particular comments crossed the line and placed a burden on Nye to take the breath test to prove his innocence. Moreover, the prosecutor's comments impugned Nye's right to contest the DUI charge and request a jury trial. See *State v. Tosh,* 278 Kan. 83, 91, 91 P.3d 1204 (2004) (prosecutor committed misconduct by asking jury to question defendant's motive for requesting jury trial after he already had confessed).

We must now determine whether the prosecutor's improper comments constituted plain error, *i.e.,* whether the comments prejudiced the jury and denied Nye a fair trial. *McReynolds,* 288 Kan. at 323. In the second step of the two-step analysis of prosecutorial misconduct, the appellate court considers three factors to determine whether a new trial should be granted:

"(1) whether the misconduct is gross and flagrant; (2) whether the misconduct shows ill will on the prosecutor's part; and (3) whether the evidence against the defendant is of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors. None of these three factors is individually controlling. Before the third factor can ever override the first two factors, an appellate court must be able to say that the harmlessness tests of both K.S.A. 60-261 (error not ground for new trial unless justice requires otherwise) and *Chapman v. California,* 386 U.S. 18, [22,] 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) (conclusion beyond reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial), have been met." *State v. Simmons,* 292 Kan. 406, Syl. ¶ 2, 254 P.3d 94 (2011).

First, Nye argues that the conduct was gross and flagrant because the comments were made over Nye's objections. However, the mere presence of an objection does not establish that the comments were gross and flagrant. The district court overruled Nye's objections during the closing argument, so if anything the prosecutor would have gathered from these rulings that his comments were appropriate. More importantly, we find it significant that the

prosecutor's comments herein were very similar to the comments approved by this court in *Wahweotten*. Although we have determined that a few of the prosecutor's comments crossed the line, we conclude that the commentary here does not rise to the level of gross and flagrant misconduct. See *State v. Decker*, 288 Kan. 306, 314-16, 202 P.3d 669 (2009) (finding it was not plain error when prosecutor stated during closing argument that defendant was no longer presumed innocent); *State v. Navarro*, 272 Kan. 573, 584-86, 35 P.3d 802 (2001) (finding it was not plain error where the prosecutor stated "you have no proof that the defendant did not act intentionally").

Second, we must examine whether the misconduct showed ill will on the prosecutor's part. *Simmons*, 292 Kan. 406, Syl. ¶ 2. Nye argues that consideration of ill will should not be a part of the test; however, we are duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its earlier position. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). There is no indication that the Kansas Supreme Court is departing from considering ill will as a factor when determining whether prosecutorial misconduct constitutes plain error. See *Simmons*, 292 Kan. 406, Syl. ¶ 2. Moreover, Nye concedes in his brief that "there is no way to show ill will on the part of the prosecutor in this case."

Third, we must consider "whether the evidence against the defendant is of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors." *Simmons*, 292 Kan. 406, Syl. ¶ 2. The evidence against Nye was substantial, if not overwhelming. Although it is true that Blumanhourst was the only witness to testify at trial, his testimony supported the conviction. Blumanhourst testified that he observed Nye driving erratically, that he immediately smelled the odor of alcohol when he approached Nye's truck, that Nye's eyes were bloodshot and his speech was slurred, that Nye fumbled with his wallet while trying to locate his driver's license, that Nye had poor balance and coordination, and that Nye failed the field sobriety tests.

Additionally, the jury viewed a videotape, over 30 minutes in length, that included Nye's driving across both the center and outer fog lines, his delayed stopping time after Blumanhourst activated his emergency lights, his performance on the field sobriety tests, and his initial denial and subsequent admission that he had drunk alcoholic beverages. The State showed the recording during its case-in-chief, and Nye replayed portions during cross-examination of Blumanhourst, requiring him to identify the clues he saw when Nye performed the field sobriety tests. There was ample direct evidence supporting Nye's conviction, and the prosecutor's comments likely had little weight in the minds of the jurors. Under the facts and circumstances of this case, we conclude the prosecutor's comments did not deny Nye a fair trial.

We will briefly address one final point before we move on to the next issue. At one point during the closing argument when the district court was ruling on an objection, the judge inadvertently stated that "the burden of proof always rests with the defendant." Nye argues that this misstatement of the law compounded the prosecutor's misconduct during closing argument. We disagree. The jury was correctly told throughout the proceedings that the burden of proof lies with the State. Nye's counsel articulated the burden of proof during voir dire; the district court gave a preliminary instruction informing the jury that the burden was on the State; and the district court verbally instructed the jury before closing arguments that the burden was on the State. Finally, the jury received a written instruction that stated: "The State has the burden of proving Steven Nye is guilty. Steven Nye is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty." Thus, although the judge's misstatement was unfortunate, the error does not warrant reversal of Nye's conviction.

## FINE FOR THE DUI CONVICTION

Finally, Nye claims the district court erred by failing to take into account his financial resources and the nature of the burden the $2,500 fine would entail before imposing the fine. Because this was Nye's fourth or subsequent DUI conviction, K.S.A. 2010 Supp. 8-

1567(g)(1) requires imposition of a $2,500 fine. However, K.S.A. 2010 Supp. 8-1567(j) states that a court may order community service in lieu of payment of the fine.

After Nye was sentenced, our Supreme Court held:

"[A] district court must take into account the defendant's financial resources and the burden of the fine when considering the method of payment of a fine for a fourth or subsequent DUI offense, *i.e.*, whether the defendant must pay a monetary fine or provide community service under K.S.A. 2009 Supp. 8-1567(j)." *State v. Copes*, 290 Kan. 209, 223, 224 P.3d 571 (2010).

As the State concedes, the district court did not consider Nye's financial status on the record prior to imposing the monetary fine, nor did it consider whether to impose a monetary fine or community service. Accordingly, we must vacate the fine and remand for the district court to consider appropriate findings pursuant to *Copes*.

Affirmed in part, vacated in part, and remanded with directions.