NOT DESIGNATED FOR PUBLICATION

No. 126,042

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WAYNE A. LAFAYETTE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Submitted without oral argument. Opinion filed November 22, 2024. Affirmed in part, reversed in part, sentence vacated in part, and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

No appearance by appellee.

Before SCHROEDER, P.J., MALONE and BRUNS, JJ.

PER CURIAM: Wayne A. Lafayette appeals his convictions of felony driving under the influence (DUI) and misdemeanor driving with a suspended license. He argues (1) the State failed to present sufficient evidence to support his DUI conviction because the officer's observations of his driving did not establish that he was too impaired to safely drive; (2) the prosecutor improperly shifted the burden of proof during closing argument by discussing Lafayette's decision not to submit to a breath test; and (3) his conviction of driving with a suspended license must be reversed and his sentence vacated because the jury did not render a verdict on that charge. The State has not filed a brief in this matter.

1

We find the evidence was sufficient to support the DUI conviction and the prosecutor did not commit reversible error in closing argument. But we agree with Lafayette that his conviction of driving with a suspended license must be reversed and his sentence on that count vacated because the jury did not render a verdict on that charge.

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of March 11, 2018, Officer Mackenzie Smith of the Hutchinson Police Department saw a black Honda fail to use a signal twice while turning. As the car pulled into a McDonald's drive-thru lane, Smith initiated a traffic stop. Smith walked over to the car, which was being driven by Lafayette, and asked him to shut the car off. Lafayette turned the car off without putting it into park and "kind of fumbled around for his stuff." He then told Smith that he had a license, but it was not valid. Smith quickly noticed a strong smell of alcohol and that Lafayette had bloodshot eyes and was slurring his speech. When asked where he was coming from, Lafayette responded a local bar and then told Smith that he had had "a bit" to drink. At that point, Smith asked Lafayette to get out of the vehicle so he could make sure that he was safe to drive.

After Lafayette got out of the car, Smith again asked how much he had been drinking to which Lafayette again responded, "A little bit." Smith asked how much "a little bit" was, and Lafayette replied, "A lot." Smith attempted to have Lafayette perform a walk-and-turn test. Lafayette appeared hesitant when asked to perform the test, so Smith told him, "We just gotta get through this, . . . doesn't mean you're getting a DUI or anything." Lafayette responded, "I'm getting a DUI right now." When Smith told Lafayette to move over to a painted yellow line to perform the test, Lafayette said, "It's not gonna work." Smith told Lafayette how the test worked, gave him instructions and examples, and then asked him to attempt the walk-and-turn. Smith later testified that Lafayette experienced significant difficulty following directions and completing the test.

At some point while he was struggling to complete the walk-and-turn test, Lafayette told Smith that he had a bad ankle. The video taken from Smith's body camera shows that Lafayette was often slurring his speech and losing his balance. After losing his balance a final time during the test, Lafayette looked over at Smith and said, "There we go. It's done right there." After not completing the test, Lafayette again told Smith that he had ankle issues and neuropathy caused by his diabetes that made the test impossible for him to perform. According to Smith, out of eight observable clues of impairment in a walk-and-turn test, Lafayette displayed four:  losing his balance in the starting position, using his arms to balance, not maintaining heel-to-toe contact, and stepping off the line. Lafayette also failed to count off his steps as he went.

Smith next asked Lafayette to perform a one-leg stand test, but Lafayette repeatedly interrupted Smith, telling him that he could not perform the test. Lafayette then stated, "Thing is, let[']s just stop it. Let[']s go." After trying to get Lafayette to at least attempt the test, Smith arrested him without any further field testing. After placing Lafayette in handcuffs, Smith put him in his patrol car and took him back to the station, where—after being read implied consent advisories—Lafayette refused to submit to a breathalyzer test. While filling out paperwork after the test refusal, Smith heard Lafayette tell another officer that he had consumed three shots of Fireball whiskey and had three beers—he did not hear Lafayette say when he had consumed those drinks.

The State later charged Lafayette in an amended complaint with felony driving "under the influence of alcohol to a degree that rendered [him] incapable of safely driving a vehicle." The State also charged him with misdemeanor driving with a suspended license. The case proceeded to a jury trial on February 19, 2019. Smith and Officer Scott Finster, who was observing as a backup officer at the scene, were the only witnesses to testify. The State also played Smith's body camera footage of the incident. Although the district court initially told the jury that Lafayette was charged with DUI and driving with a suspended license, it did not instruct the jury on the driving with a suspended license

3

charge, nor did the court provide a verdict form for that offense. Neither party noticed the absence of any instruction on that offense when reviewing the instructions before they were given to the jury. And the State did not address that charge in its closing argument. The jury found Lafayette guilty of DUI. At no point did the district court or the parties mention the driving with a suspended license charge before the court released the jury.

Lafayette did not appear at his sentencing in March 2019. The district court finally held sentencing on January 20, 2023. The district court imposed a one-year jail sentence for the DUI but ordered Lafayette to be placed on probation after serving three months. The district court also ordered a concurrent six-month jail sentence for driving with a suspended license. Again, neither party noticed the fact that Lafayette was not found guilty of that charge. The district court also ordered Lafayette to pay $2,600 in fines. Lafayette timely appealed the district court's judgment.

SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE DUI CONVICTION

Lafayette first claims the State did not present sufficient evidence to support his DUI conviction. More specifically, Lafayette argues that there was insufficient evidence to find that he was incapable of safely driving because the only traffic infraction Smith saw was failure to signal a turn and Smith did not see any other signs of erratic driving.

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

The State charged Lafayette with driving under the influence under K.S.A. 8-1567(a)(3), which prohibits a person from operating or attempting to operate any vehicle

while "under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." The jury was instructed:

> "Wayne Lafayette is charged with operating a vehicle while under the influence of alcohol. Wayne Lafayette pleads not guilty.
> "To establish this charge, each of the following claims must be proved:
> "1. Wayne Lafayette operated a vehicle.
> "2. Wayne Lafayette, while operating was under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle.
> "3. This act occurred on or about the 11th day of March 2018, in Reno County, Kansas."

On appeal, Lafayette only argues that the State failed to present sufficient evidence for a rational fact-finder to find that he was incapable of driving safely. He asserts that the only traffic infraction Smith observed was his failure to use a turn signal. Lafayette is correct that Smith did not recall seeing him swerving his car, failing to maintain his lane, or having any problems with braking or accelerating, nor did Smith observe him speeding or committing any other traffic violations.

In *State v. Blair*, 26 Kan. App. 2d 7, Syl. ¶ 2, 974 P.2d 121 (1999), this court held that direct evidence of observed erratic driving is not a requirement for a DUI conviction under K.S.A. 8-1567(a)(3). Lafayette acknowledges our holding in *Blair* but asserts that "in cases where direct evidence of unsafe driving is lacking, this Court typically demands additional evidence to fill the gap." Here, the record includes plenty of additional evidence to fill any gap to support Lafayette's DUI conviction. Smith detected a strong odor of alcohol, bloodshot eyes, slurred speech, and a loss of balance. Lafayette admitted to Smith that he had been drinking "a bit" and "[a] lot." Lafayette failed the walk-and-turn test, did not try the one-leg stand test, and refused to submit to a blood-alcohol breath test. The body camera footage supports Smith's assessments of Lafayette's

5

incapacity as he was visibly unbalanced, slurring his speech, and unable to follow directions.

Smith's recollections were bolstered by the testimony of Finster, who recalled that Lafayette failed the walk-and-turn test by starting prematurely, losing his balance, using his hands to balance, taking the incorrect number of steps, and not completing the test. He also remembered that Lafayette was repeatedly stumbling around and "kept saying I— take me to jail. I'm drunk. Just take me to jail. I can't do this. Multiple times over and over again. Multiple times when Officer [Smith] tried to instruct the test."

There was also evidence at trial that Lafayette told the officers he suffered from diabetic neuropathy and an ankle injury that impaired his ability to take the field sobriety tests. The jury was allowed to weigh this evidence in deciding whether Lafayette was guilty of DUI. But on appeal, in determining whether the evidence is sufficient to support a conviction, we review the evidence in the light most favorable to the State without reweighing the evidence. *Aguirre*, 313 Kan. at 209.

The State presented the jury with the officers' testimony on several indicators of impairment Lafayette displayed as well as the video showing Lafayette's condition during the incident. The State was not required to present direct evidence of Lafayette's failure to drive safely to sustain a conviction. When viewed in a light most favorable to the State, the testimony of the officers combined with the body camera footage was sufficient for a rational fact-finder to find beyond a reasonable doubt that Lafayette was driving while under the influence of alcohol to a degree that rendered him incapable of safely driving.

PROSECUTORIAL ERROR DURING CLOSING ARGUMENT

Lafayette next claims the State committed prosecutorial error during closing argument. More specifically, he argues that the prosecutor improperly shifted the burden

6

of proof during closing argument by stating that Lafayette could have proven his innocence by submitting to a blood-alcohol breath test.

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman*[ *v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

Prosecutors are granted wide latitude in crafting their closing arguments, and an appellate court considering whether a challenged statement falls afoul of that latitude must consider the comment in the context in which it was made, rather than analyzing it in isolation. *State v. Thomas*, 307 Kan. 733, 744, 415 P.3d 430 (2018). A prosecutor is not permitted "'to attempt to shift the burden of proof to the defendant or to misstate the legal standard of the burden of proof.'" *State v. Williams*, 299 Kan. 911, 939, 329 P.3d 400 (2014). But "[t]he prosecutor's comment must be evaluated in context and can be mitigated by jury instructions regarding the burden of proof." *State v. Peppers*, 294 Kan. 377, 397, 276 P.3d 148 (2012).

Lafayette points to the following passage of the State's closing argument as proof that it attempted to improperly shift the burden:

> "And while taken to the jail the defendant had a perfect opportunity *to prove he wasn't drunk*. All he had to do was submit a breath sample. That was it. That's all he had to do

7

was to submit that breath sample, and *he could have proven he wasn't drunk*." (Emphases added.)

Lafayette objected to this comment at trial and stated that Lafayette "doesn't bear the burden to prove anything." The district court did not sustain or overrule the objection but only told the jurors that "closing statements are the view of counsel" and "not the law." Lafayette asserts on appeal that the district court's response to the objection "magnified the harm to [Lafayette's] case."

Under K.S.A. 8-1001(n), a person's refusal to submit to a blood-alcohol breath test shall be admissible evidence against the person at any trial on a DUI charge. Because the evidence is admissible, this court has held that a prosecutor may comment on the defendant's test refusal during closing argument without improperly shifting the burden of proof to the defendant. *State v. Wahweotten*, 36 Kan. App. 2d 568, 584-85, 143 P.3d 58 (2006). In that case, the prosecutor made this statement in closing argument:

> "'The refusal to submit to the test is evidence of the defendant's intoxication, cause why else wouldn't he take the test? What other reason could there be? Why would you refuse to be tested? Why would the defendant refuse to be tested if he's not intoxicated, if he has nothing to hide?'" 36 Kan. App. 2d at 584.

We held in *Wahweotten* that "[w]hen referring to the defendant's refusal to take the breath test, the prosecutor was discussing the evidence that had been properly admitted at trial. The prosecutor's comments were within the wide latitude allowed in discussing the evidence." 36 Kan. App. 2d at 585.

In another DUI case, *State v. Nye*, 46 Kan. App. 2d 182, 192, 261 P.3d 923 (2011), the prosecutor made this statement about the defendant's test refusal in closing argument:

"'We all know the result will be incriminating if he had taken it [the breath test]. Why is he saying he's not guilty? He knew back then, 1st of February 2009. Now he's saying he's not guilty. Does that make sense to you?

. . . .

"' . . . The defendant is guilty. He knows it.'"

While recognizing that a prosecutor can comment on the defendant's breath test refusal in a DUI case, this court found this statement crossed the line because it infringed on the defendant's right to plead not guilty and request a jury trial. 46 Kan. App. 2d at 194-95. Still, this court found that the prosecutor's improper comment did not prejudice the jury and deny the defendant a fair trial. 46 Kan. App. 2d at 195-96. In reaching this conclusion, this court considered the substantial evidence the State presented of the defendant's guilt and the fact that the district court properly instructed the jury that the burden of proof lies with the State. 46 Kan. App. 2d at 196-97.

The prosecutor's comments on Lafayette's refusal to submit to a breath test fall somewhere between the comments in *Nye* and the comments in *Wahweotten*. The prosecutor may have used a poor choice of words by saying that Lafayette "could have proven he wasn't drunk." But when considering the prosecutor's entire argument in context, we find the comments fall within the wide latitude allowed in discussing the evidence. The prosecutor was commenting on inferences that could be drawn from the evidence. The prosecutor never argued, as Lafayette alleges, that Lafayette was required to prove his innocence before the jury at the trial. Instead, the prosecutor told the jury that the State was required to prove every element of the crime beyond a reasonable doubt, asked the jury to consider every element included in the jury instructions, provided a reasonable summary of the evidence the State had presented, and argued that the State's evidence was more credible than Lafayette's explanations for his actions.

Finally, even if we found that the prosecutor's isolated statement was improper and constituted error, we would find that the error did not prejudice Lafayette's right to a fair

trial and require reversal of his DUI conviction. The statement did not affect the outcome of the trial in light of the entire record. In reaching this conclusion, we consider that the district court properly instructed the jury that "[t]he State has the burden to prove Wayne Lafayette is guilty. Wayne Lafayette is not required to prove he is not guilty." The prosecutor's comments in their entirety did not shift that burden.

## DRIVING WITH A SUSPENDED LICENSE CONVICTION

Finally, Lafayette argues that he was never found guilty of driving with a suspended license and thus the district court erred by entering judgment and imposing a sentence on that charge. We agree.

Although Lafayette did not object to the district court's entry of judgment or its imposition of a sentence for the driving with a suspended license charge, he is effectively arguing that his sentence is illegal. And this court may correct an illegal sentence at any time while the defendant is serving the sentence. K.S.A. 22-3504(a). He also asserts that the issue may be considered for the first time on appeal because it involves only a question of law arising on determined facts and that review is necessary to serve the ends of justice. For these reasons, and because the State has not objected or even filed a brief in opposition, we will consider the issue for the first time on appeal.

An illegal sentence claim is a question of law subject to unlimited review. Likewise, claims involving statutory interpretation are also subject to unlimited review. *State v. Johnson*, 317 Kan. 458, 461, 531 P.3d 1208 (2023).

Before trial both parties included proposed jury instructions for the driving with a suspended license charge. And at the beginning of trial the district court stated that Lafayette was charged with both driving under the influence and driving with a suspended license. But the final jury instructions omitted any instruction for the driving

10

with a suspended license charge and the verdict form only includes the DUI charge. At the end of the trial, the district court announced the jury's verdict as follows: "We the jury find Wayne Lafayette as to operating a motor vehicle while under the influence of alcohol guilty." The district court did not mention the driving with a suspended license charge before releasing the jury. And neither party mentioned the oversight.

K.S.A. 22-3424(a) states that "[t]he judgment shall be rendered and sentence imposed in open court." Lafayette also points to subsection (c) of the statute, which provides that "judgment shall be rendered and sentence pronounced without unreasonable delay" following a guilty verdict. K.S.A. 22-3424(c). Here, no verdict was ever reached on the driving with a suspended license charge. We conclude that without a judgment finding Lafayette guilty of the offense of driving with a suspended license, there can be no conviction and, therefore, no basis for imposing any sentence.

Turning to the appropriate remedy, this court has addressed a similar situation in *State v. Wood*, No. 116,376, 2018 WL 3485788, at *7-10 (Kan. App. 2018) (unpublished opinion), where a district judge failed to render a verdict on a particular criminal charge after a bench trial but nevertheless entered a conviction and sentenced the defendant. The *Wood* court determined that the district judge's failure to enter a judgment of guilty was not a clerical error, but a substantive one in violating K.S.A. 22-3424(a)'s requirement to render the judgment in open court. And because no judgment was rendered, the *Wood* panel reversed the conviction and vacated the sentence. 2018 WL 3485788, at *10.

The district court imposed a six-month jail sentence for Lafayette's conviction of driving with a suspended license. It also ordered him to pay $2,600 in fines. Lafayette acknowledges that the total fine appears to be the mandatory $2,500 fine for DUI plus the minimum $100 fine for driving while suspended. See K.S.A. 8-1567(b)(1)(E) (fine of $2,500 for DUI); K.S.A. 8-262(a) (minimum fine of $100 for driving while suspended). As Lafayette requests in his brief, we reverse his conviction of driving with a suspended

11

license and vacate his six-month jail sentence and $100 fine on that count. We remand with directions for the district court to file a corrected journal entry of judgment.

Affirmed in part, reversed in part, sentence vacated in part, and remanded with directions.