NOT DESIGNATED FOR PUBLICATION

No. 125,733

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EDDIE WAYNE SCOTT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Submitted without oral argument. Opinion filed July 5, 2024. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Sierra M. Logan*, assistant district attorney, *Thomas Stanton*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: A jury convicted Eddie Wayne Scott of driving under the influence to a degree that rendered him incapable of safely driving the vehicle. On appeal, Scott argues the State's evidence was insufficient to convict him because the State did not present evidence of his alcohol concentration or show he was incapable of safely driving a vehicle. But Scott's argument largely, and improperly, reweighs the evidence and reassesses witness credibility. When viewed in the light most favorable to the State, the evidence is sufficient to support Scott's conviction.

1

FACTUAL AND PROCEDURAL BACKGROUND

On August 27, 2020, 16-year-old Peyton Burkhart was driving down a two-lane dirt road, headed to the grocery store after football practice, when a man driving a gray SUV in the opposite direction stopped him on the road. When Burkhart pulled over on Industrial Park Road in his orange Dodge truck, the man who stopped him was unintelligibly yelling at Burkhart. Unable to understand what the man was saying, Burkhart decided to ignore him and continue to the grocery store.

As Burkhart drove away, he watched the gray SUV in his rearview mirror and saw it drive into the ditch and back onto the road twice before turning around and driving in the same direction as Burkhart. He noticed the ditch was deep, and the SUV was driving fast enough to kick up dust and dirt. Burkhart then turned off the dirt road and continued driving until he parked at the front of the grocery store.

Burkhart was in the store for 5-10 minutes. While he was checking out, Burkhart looked through the front window and noticed the driver of the gray SUV taking photos of his license plate. But when he exited the store and found the driver was gone, Burkhart sought out a Buhler police officer. He located on-duty Officer Anthony Baldwin to inform him about what occurred. Unbeknownst to Burkhart, dispatch had already informed Officer Baldwin that Eddie Wayne Scott, who was later identified as the driver of the SUV, called 911 and reported Burkhart as a drunk driver. During their conversation, Officer Baldwin informed Burkhart that someone had reported him as a drunk driver, and asked Burkhart if he had been drinking. Officer Baldwin determined Burkhart had not been drinking and proceeded to try and locate Scott.

Meanwhile, back on Industrial Park Road, Raymond Casanova was working at his motorcycle shop located near the spot Burkhart had stopped for the gray SUV. When Casanova heard noise outside, he looked toward the road and noticed an orange truck and

2

gray SUV parked on opposite sides of the road. Casanova observed the driver of the SUV angrily yelling and gesturing from his vehicle. And he noticed a younger kid in the truck. As the truck left, Casanova guessed that it was trying to get away from the SUV. He saw the SUV fishtailing and weaving in and out of the ditch, throwing up gravel, as it followed the truck toward the grocery store. Casanova called Officer Baldwin and reported the incident.

As Officer Baldwin drove around town looking for Scott, who he was familiar with, the officer located the gray SUV at an intersection. Officer Baldwin observed Scott take a turn too wide around the corner of the intersection and continue driving around the street. Surprised that Scott saw him yet did not want to talk to him about his drunk driving report, Officer Baldwin proceeded to follow Scott and turned on his lights to signal Scott to stop. Scott pulled into a driveway, but as he did so, he turned too soon, hit the curb, and drove over some grass before reaching the driveway.

Officer Baldwin approached Scott and initiated a conversation. He observed Scott's slurred speech, glossy eyes, and an odor of alcohol on his breath. Having known Scott a while, Officer Baldwin noticed Scott's speech was less clear than normal. Scott was removed from his vehicle but was unable to perform field sobriety tests due to his medical history. Ultimately, Officer Baldwin arrested Scott on suspicion of driving under the influence.

After being taken to jail, Scott refused to consent to a breath test. Officer Baldwin did not attempt to obtain a warrant for a blood draw. About four months later, the State charged Scott with one count of driving under the influence—his fourth offense—as well as one count of driving while suspended and one count of reckless driving.

On March 15, 2022, the district court held a jury trial on the State's charges. After the State presented the testimony of Burkhart, Casanova, and Officer Baldwin, Scott

3

testified in his own defense. Scott said he was working with sheetrock and spray paint while remodeling a home for most of the day before his arrest. He explained a car accident caused injuries that prevented him from completing the field sobriety tests. "I had every bone in my face was [*sic*] broken. My jaw was broken. My skull was cracked. I was very fortunate to walk away and I had several surgeries." And he testified the same injuries prevented him from performing a breath test. Scott testified that he informed Officer Baldwin of his injuries and asked for a blood test, which Officer Baldwin denied.

On rebuttal, the State recalled Officer Baldwin, who refuted much of Scott's testimony. Officer Baldwin testified Scott's use of paint did not factor into his investigation because, contrary to Scott's testimony, Scott was painting a home using paint from a can, not spray paint, and he did not notice any fumes emitting from Scott during their encounter. Officer Baldwin testified that he could not remember if Scott asked for a blood test, but "at that particular time he was getting belligerent and uncooperative," so he booked Scott after he denied the breath test.

The jury convicted Scott on all charges. And the district court sentenced Scott to serve 12 months in county jail, ordering it be served consecutive to an earlier sentence. Scott appeals.

REVIEW OF SCOTT'S APPELLATE CHALLENGE

In his only issue on appeal, Scott contends the State did not present sufficient evidence to convict him of driving under the influence because it "lacked any evidence" to support multiple elements of the crime. The standard of review when considering sufficiency of evidence challenges is well-known:

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational

factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. This court has also recognized that there is no distinction between direct and circumstantial evidence in terms of probative value. "A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference." [Citations omitted.]'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

As Scott correctly notes, the State is required to prove each element of a charged crime. "In Kansas criminal proceedings, the State's burden is to prove the defendant's guilt beyond a reasonable doubt; to satisfy that burden, the State must 'prove beyond a reasonable doubt each required element of the [the charged] crime.'" *Miller v. State*, 298 Kan. 921, 930, 318 P.3d 155 (2014); see K.S.A. 21-5108(a).

Here, the State charged Scott with driving under the influence under K.S.A. 2020 Supp. 8-1567(a)(3), which provides:  "(a) Driving under the influence is operating or attempting to operate any vehicle within this state while: . . . (3) under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle."

And the jury was instructed:

"In Count One, Eddie Scott is charged with operating or attempting to operate a vehicle while under the influence of alcohol. Eddie Scott pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. Eddie Scott operated or attempted to operate a vehicle.

"2. Eddie Scott, while operating the vehicle, was under the influence of alcohol to a degree that rendered him incapable of safely operating a vehicle.

"3. This act occurred on or about the 27th day of August 2020, in Reno County, Kansas."

On appeal, Scott's argument largely, and improperly, reweighs the evidence and reassesses his credibility as a witness. First, he contends the State did not present any evidence regarding his "specific blood alcohol level." And he argues his request for a blood test at the jail creates reasonable doubt because "[t]he fact that [he] wanted a blood test demonstrated that he was confident that the results would exonerate him." Second, he briefly reweighs the testimony presented by the State's three witnesses to argue the State did not present sufficient evidence to show he was incapable of safely driving his vehicle.

Contrary to his argument on appeal, the State presented sufficient evidence for a rational fact-finder to find Scott guilty beyond a reasonable doubt. While it is true that the State did not present any evidence of his "specific blood alcohol level," the State was not required to present such evidence to meet its burden under K.S.A. 2020 Supp. 8-1567(a)(3). If the State had charged Scott under K.S.A. 2020 Supp. 8-1567(a)(1) or (a)(2)—which both define a specific "alcohol concentration" as "0.08 or more"—then Scott's argument may be more persuasive.

Since the State charged Scott under K.S.A. 8-1567(a)(3), the State need only prove that Scott was operating, or attempting to operate, his vehicle within Kansas while "under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." And as explained in the standard of review, a fact-finder may find a defendant guilty based on circumstantial evidence alone. See *Aguirre*, 313 Kan. at 209.

In this vein, Kansas courts have held the incapacity to drive safely under K.S.A. 8-1567(a)(3) can be established through sobriety tests and other means. *State v. Blair*, 26 Kan. App. 2d 7, Syl. ¶ 2, 974 P.2d 121 (1999). Here, the State presented evidence that three people saw Scott operating a gray SUV in Reno County, Kansas, on August 27, 2020. The same day, Burkhart and Casanova described seeing Scott drive erratically on Industrial Park Road. Both watched as Scott drove in and out of the ditch twice along the

road, at a speed that caused gravel and dust to kick up in the air, before Scott ultimately made a U-turn in the middle of the road to follow Burkhart.

Burkhart testified Scott yelled unintelligibly during their encounter, stating Scott's words were "[a]ll kind of blended together" and describing Scott's behavior as "volatile yelling." Casanova also testified that Scott "[s]eemed pretty angry" and "[p]retty upset with whatever was going on" when Casanova witnessed the encounter from his motorcycle shop.

The State also presented testimony that Officer Baldwin, armed with this information, observed Scott take a too-wide turn in his gray SUV and then watched Scott jump a curb and pull into a driveway when Officer Baldwin turned on his lights. When Officer Baldwin approached Scott in his SUV, Officer Baldwin noted factors that tend to support a conclusion that Scott was driving under the influence, such as slurred speech, glossy eyes, and an odor of alcohol emitting from his breath. And although Scott was unable to perform field sobriety tests due to his medical issues, Officer Baldwin noted Scott seemed to struggle with maintaining his balance.

This court has previously recognized several of these indicators as evidence of impairment. See *State v. Wahweotten*, 36 Kan. App. 2d 568, 570, 143 P.3d 58 (2006) (defendant's bloodshot eyes and slurred speech); *State v. Moore*, 35 Kan. App. 2d 274, 283, 129 P.3d 630 (2006) (defendant's difficulty communicating, delayed actions, and odor of alcohol); *State v. Huff*, 33 Kan. App. 2d 942, 945-46, 111 P.3d 659 (2005) (defendant's erratic driving, bloodshot eyes, fumbling to find his driver's license, and the odor of alcohol formed a substantial basis for his conviction).

When viewed in a light most favorable to the State, the evidence presented here was sufficient to sustain Scott's conviction of driving under the influence to a degree that rendered him incapable of safely driving a vehicle. The jury heard evidence that multiple

7

witnesses observed Scott's erratic driving. And Officer Baldwin testified to multiple indicators of Scott's impairment that Kansas courts have found permissible as evidence of driving under the influence of alcohol. As such, a reasonable fact-finder could have found Scott guilty beyond a reasonable doubt based on the evidence presented by the State.

Affirmed.